ORIGINAL

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

FILED
JAN 31 2008
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| INTERNATIONAL OUTSOURCING SERVICES, LLC) | 08-70 C |
| Plaintiff ) | Case No. ______ |
| v. ) | |
| THE UNITED STATES OF AMERICA, ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, by its undersigned attorneys, hereby submits its Complaint and states and alleges as follows:

## THE PARTIES

Plaintiff, International Outsourcing Services ("IOS"), LLC is a limited liability company organized under the laws of Indiana, with headquarters located at 1600 W. Bloomfield Road, Bloomington, Indiana 47403. Defendant, the United States of America, acts through Army & Air Force Exchange Service ("AAFES"), PO Box 660202, Dallas, TX 75266.

## JURISDICTION

Plaintiff, pursuant to 28 U.S.C. § 1491(a) and 41 U.S.C. § 609(a), appeals the final decision of the AAFES Contracting Officer Ms. Janie Walker dated February 1, 2007. (Attachment A).

## FACTS

1. IOS, one of the nation's largest coupon clearinghouses for retailers, contracts with retailers, retailer associations, and others to process coupons and invoice manufacturers on behalf

of retailers to redeem those coupons.

2. Under Solicitation AAFES-PZS-97-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, AAFES on December 12, 2000, awarded International Data, IOS' predecessor, Contract HQ 00-PZS-096 ("Contract") for coupon redemption services to AAFES for a flat dollar fee of $8.45 for each 1,000 redeemed coupons.

3. Under the Contract AAFES forwarded coupons from over one hundred world-wide locations to IOS for processing. AAFES contractually was required to account for the value and quantity of the coupons in each shipment. Over the course of this contract, IOS recovered for AAFES tens of millions of dollars.

4. IOS on AAFES' behalf, would sort, handle, invoice and secure redemption of all valid coupons received.

5. IOS verified each AAFES coupon shipment and made adjustments for variances and addition errors. Further, IOS paid AAFES within 30 days of coupon receipt "for the total face value of all coupons claimed on the invoice plus reimbursement for AAFES freight/shipping charges, plus the handling allowance for each coupon, minus the applicable service fee for each coupon."

6. IOS forwarded coupons to the issuing manufacturer and billed that manufacturer accordingly.

7. IOS was permitted to chargeback amounts not paid by the manufacturers on subsequent IOS payments to AAFES.

8. In its transmission to AAFES, IOS supported chargebacks by identifying the invoice number, manufacturer, amount, and chargeback reason code.

9. Chargebacks are industry standard practice and are assesed when manufacturers deny coupon redemption to a retailer. Manufacturers generally provide chargeback codes as to why a

requested coupon reimbursement was denied. IOS included these codes in its transmissions to AAFES based on the chargeback codes provided by manufacturers.

10. The IOS-AAFES contract ended effective July 1, 2004.

11. Well after 42-months of contract performance was concluded, on October 20, 2004, AAFES e-mailed IOS, claiming that IOS had improperly deducted some $213,000 from payments to AAFES because "the manufacturer short paid IOS due to the fact the manufacturer did not receive the number of coupons the clearinghouse stated they mailed." AAFES has never contended that IOS in any way profited or otherwise benefited from what AAFES correctly characterizes as "manufacturer short payments to IOS."

12. In November 5, 2004, IOS submitted a detailed response to AAFES' October 20, 2004 e-mail, explaining that "the short payments were the result of a denial of payment by the manufacturer, and not the result of any documented loss of coupons that would be covered under insurance."

13. During contract performance, IOS advised AAFES in interfacing with manufacturers in a manner similar to that employed by other large retailers. IOS voluntarily provided experts to assist in improving AAFES' system for recovering any manufacturer chargebacks deemed by AAFES to be unwarranted.

14. On February 25, 2005, AAFES provided IOS a spreadsheet, without any explanation or documented support, effectively recasting what had been manufacturer chargebacks as "IOS Lost Coupons".

15. On March 14, 2005, the Contracting Officer, Ms. Janie Walker, e-mailed IOS, this time claiming, (again with no coherent explanation as to why AAFES was contending any coupons had been "lost", or were otherwise contractually attributable to IOS), that IOS had improperly

deducted $316,903.02 from payments to AAFES.

16. On March 17, 2005, IOS explained that all IOS payments to AAFES had been documented and identified based upon manufacturer chargebacks, consistent with the parties' contract and standard industry codes for nonpayment.

17. In 2005, AAFES attempted to obtain reimbursement by invoicing some two dozen manufacturers for short payments alleged to have occurred in 2002 and 2003. A vast majority of these AAFES invoices were sent to tobacco companies, particularly Brown & Williamson Tobacco.

18. Each invoice to these manufacturers included a reference to an invoice number, invoice date, reason for denial code (e.g. 1831), count and amount due -- all IOS-generated information previously (and much more timely) given to AAFES. The denial codes on these invoices are IOS codes.

19. Each AAFES invoice to the manufacturers states that "the following represents coupon chargebacks on invoices that you have refused to honor."

20. Almost a year after IOS' March 2005 response to AAFES, on February 22, 2006, the Contracting Officer issued another letter to IOS, this time claiming, with no explanation for its wildly varying contentions, that IOS was liable for $913,768.39 in lost coupons, contending that the manufacturers "advised that they did not receive the amount of coupons IOS said they shipped."

21. By letter of March 22, 2006, IOS disputed this new computation, and again asked for any records that would support the new $913,768.39 figure. No response to that submission was ever received by IOS.

22. Almost a year later, on February 1, 2007, the Contracting Officer issued a final decision claiming that IOS breached the IOS-AAFES contract by losing coupons valued at $596,865.37.

23. The 2000 IOS-AAFES Contract expressly authorized IOS, to the extent that it was unable to obtain payment from a manufacturer for redeemed coupons, to deduct the value of such coupons from later payments to AAFES.

24. While the Contract Schedule imposed liability on IOS for the "physical loss" of AAFES-owned merchandise coupons while such coupons were in IOS' custody or control, AAFES has provided no documented or any other evidentiary support for its contentions as to lost coupons.

25. AAFES has no bases to deny that all coupons IOS shipped to manufacturers went by secure freight in a direct shipment from IOS facilities, with each shipment containing only IOS coupons from IOS directly to the manufacturers or their agents.

26. IOS denies ever "losing" coupons, and further denies that AAFES has ever at any time provided any evidence to the contrary. Further, the sole deductions IOS made reflected manufacturer "chargebacks" or denial of payment, for which the IOS-AAFES Contract expressed provided.

27. AAFES has failed to show that IOS ever failed to clearly identify to AAFES the deductions by manufacturer, invoice, exchange, dollar value and count of adjustment, and chargeback reason code.

**COUNT ONE**

**(Request for Declaratory Relief)**

IOS realleges and incorporates paragraphs 1 through 27.

28. An actual controversy exists between AAFES and IOS as to why AAFES claims that any IOS deduction of manufacturer chargebacks in any way was ever improper, or otherwise not

entirely consistent with the parties' respective contractual rights.

29. Apart from the fact that no factual or contractual basis exists to support AAFES claims against IOS, AAFES has failed to mitigate its purported losses and should be denied its claim under the doctrines of laches and failure of damage mitigation.

30. The true controversy here is that a dispute exists, not with IOS, but rather, between AAFES and certain manufacturers, particularly tobacco manufacturers, as to payment of AAFES-submitted coupons. The AAFES-IOS contract does not provide for AAFES' attempt to shift this dispute to IOS.

31. In order to prevail in claiming a breach of contract, AAFES is obligated to prove that manufacturer chargebacks relate to conduct or actions for which IOS bears contractual responsibility. AAFES has not and cannot meet this burden of proof.

32. Absent any credible proof by AAFES that IOS should bear contractual responsibility for manufacturer chargebacks, IOS is entitled to an order absolving it of any liability under the IOS-AAFES Contract awarded in 2000.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff IOS prays this Court enter judgment in its favor and against Defendant the United States of America as follows:

1. Declare the AAFES February 1, 2007 claim to be null and void due to a complete lack of any credible substantiation.

2. Award IOS its costs and legal fees in this action as allowed by law; and

3. Grant such other relief as the Court determines to be just and appropriate.

Dated: January 31, 2008

Respectfully submitted,

David T. Hickey

David T. Hickey
**GREENBERG TRAURIG, LLP**

2101 L Street, N.W.
Suite 1000
Washington, D.C. 20037
Tel: (202) 331-3159
Fax: (202) 261-0182
E-mail: hickeyd@gtlaw.com

AAFES

ARMY & AIR FORCE EXCHANGE SERVICE
PO BOX 660202
DALLAS TX 75266-0202
(214) 312-2011

AAFES-FA-Z February 1, 2007

International Outsourcing Services
ATTN: Debby Flynn
501 S. Madison
Bloomington, IN 47403

Dear Ms. Flynn:

1. On 12 December 2000, AAFES awarded contract HQ 00-PZS-096 to International Outsourcing Services (IOS) for Coupon Redemption Services.

2. It is my determination that IOS is in breach of AAFES Contract No. HQ 00-PZS-096 and is responsible for the loss of AAFES coupons valued at $596,865.37. The contract reads as follows:

Exhibit C, Coupon Submission and Reimbursement, page 1 of 3
(b) Responsibility for loss of coupons will pass to the contractor at the time of receipt.

Schedule, Contractor Liability, page 1 of 5
(7) Contractor will have full liability for the AAFES owned merchandise coupons while said coupons are in the care, custody, or control of contractor. Contractor agrees to reimburse AAFES in full for any physical loss or damage to the aforementioned coupons while in the care, custody or control of contractor.

Exhibit C, Unredeemable Coupons, page 2 of 3

(a) If the contractor is unable to obtain payment from the issuing manufacturer, AAFES authorizes the contractor to deduct the value of such coupons due from subsequent payments.

(b) As deemed necessary, and at the request of AAFES, the contractor will request that the respective coupon manufacturer provide rejected coupons (e.g. expired coupons, IN-AD, physical appearance, etc.) for review. If actual coupons are not available, a printed report will be provided, listing appropriate data supporting the reason the coupons were rejected.

The notice must state that an appeal is intended, reference this decision, and identify the contract by number. Instead of appealing to the ASBCA, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision.

Janie Walker

JANIE WALKER, C.P.M.
Contracting Officer

3. According to the contract, IOS was responsible for coupons while in IOS's control. The Scope of Service, Exhibit C, states that contractor will use secure redemption. Contractor was required to forward coupons for redemption in a secure method and keep track of the coupons, as well as maintain an audit trail. After many attempts by AAFES, IOS has offered no explanation for numerous charge backs which include only an invoice number and amount charged back. No printed report was provided by contractor. It is my determination that these coupons were lost between the time IOS shipped them and the time the other Clearing Houses received them.

4. IOS deducted $596,865.37 from payments to AAFES because the manufacturer short paid IOS due to the fact that the manufacturer did not receive the number of coupons IOS stated were mailed. IOS paid AAFES for an actual count of coupons received from AAFES. AAFES should not be charged back by IOS for lost coupons once IOS paid AAFES for an actual count received.

5. The contract states that IOS is responsible for any loss of coupons once they have received the shipment. The contract is clear on what IOS can deduct from subsequent payments and loss of coupons is not one of the reasons.

6. It is my determination that IOS was negligent and did not take proper measures to insure delivery of coupons (i.e. certified mail, etc.). We have supporting documentation for $596,865.37. Request check in the amount of $596,865.37 be forwarded to me at the following address within 60 days of receipt of this letter –

AAFES
ATTN: AAFES-FA-Z, Janie Walker
3911 S. Walton Walker Blvd.
Dallas, TX 75236

7. This is the final decision of the contracting officer. You may appeal this decision to the Armed Services Board of Contract Appeals (ASBCA) within 90 days from the date you receive this decision, by mailing or otherwise furnishing written notice to the ASBCA and providing a copy of the notice to me at the following address:

AAFES
ATTN: AAFES-FA-Z, Janie Walker
3911 S. Walton Walker Blvd.
Dallas, TX 75236