IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL OUTSOURCING SERVICES, LLC, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 08-70C |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO STAY PENDING THE RESOLUTION OF CRIMINAL PROCEEDINGS OR, IN THE ALTERNATIVE, TO CANCEL SUMMARY JUDGMENT BRIEFING SCHEDULE**

Defendant respectfully requests that this Court issue an order staying the proceedings in this matter pending completion of related criminal proceedings discussed in this motion.

DEFENDANT'S BRIEF

QUESTION PRESENTED

Whether proceedings in this matter should be stayed, pending completion of a related criminal proceeding being conducted in the United States District Court for the Eastern District of Wisconsin.

STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiff, International Outsourcing Services, LLC ("IOS"), filed this action pursuant to 28 U.S.C. § 1491(a) and 41 U.S.C. § 609(a). Complaint ("Co.") at page 1. Specifically, the complaint challenges a final decision of a contracting officer of the Army & Air Force Exchange Service ("AAFES") that demanded IOS repay $596,865.37 that IOS had withheld from payments to AAFES during performance of the contract. Co. Exhibit A.

## II. Statement Of Facts

In December 2000, AAFES and IOS entered into a contract providing that IOS would perform coupon redemption services for AAFES. Co. ¶ 2. The contract provided that IOS, for a fee of $8.45 per 1,000 redeemed coupons, would secure redemption of coupons used by customers at AAFES's retail stores. Co. ¶¶ 2-3. The contract required IOS to pay AAFES the face value of the coupons within 30 days of receipt of those coupons. Co. ¶ 5.

In certain circumstances, the contract allowed IOS to deduct from future payments ("charge back") to AAFES the value of coupons for which IOS was unable to obtain reimbursement from the issuer of the coupon. Co. ¶ 7; Counterclaim ("CC") ¶ 5. A dispute arose between the parties concerning amounts deducted from payments by IOS to AAFES during the course of the contract. Co. ¶¶ 11-22. AAFES contends that these deductions were improper.

AAFES recently began conducting an internal audit to determine the precise amount of IOS deductions that it disputes. The auditors are working through more than 90 boxes of contract records and will not complete the audit for at least several more weeks. To date, the auditors have found statements from IOS that provide a variety of reasons for the charge backs. As described in our counterclaim, IOS provided no explanation for some of its charge backs to AAFES, while in others it stated that they were for "REASON 1831", which IOS later explained means "coupon count/value adj (-)." CC ¶ 7. In addition, the auditors have now found additional charge backs for reasons such as "the physical appearance [of the coupon] is suspect" and "abnormal coupon mix." Appendix ("A") 1-2.

Shortly after the June 30, 2008 initial status conference in this matter, defendant's counsel learned of ongoing criminal proceedings against many former owners and/or executives

of IOS. These criminal proceedings began on March 6, 2007 when a grand jury in the United States District Court for the Eastern District of Wisconsin issued an indictment against IOS and many of its former owners/executives. The indictment charged the defendants with 25 counts of wire fraud.

On May 17, 2007, the Government filed a motion to dismiss the indictment against IOS without prejudice. A3-8. The motion stated that IOS had agreed to cooperate in the ongoing investigation and prosecution of individuals charged in the indictment related to the fraud scheme, as well as the investigation and prosecution of persons associated with IOS for possible obstruction of justice both before and after the indictment. A3, ¶2 The motion further stated that IOS had agreed to install a new management team after removing the indicted individuals from their roles with the company. Id. at ¶3.

On December 5, 2007, a grand jury issued a superseding indictment against the remaining defendants from the original indictment. A9-33. The superseding indictment explained that IOS was owned by two corporations: Indiana Data, Inc., which was owned by defendants Bruce Furr, Steven Furr, and Lance Furr; and NAFTA, Ltd., which was owned by a publicly traded company and defendant Thomas Balsiger. A10, ¶3(b). Mr. Balsiger was IOS's president, chief operating officer and later chief executive officer ("CEO"). Id. at ¶3(c). Bruce Furr was chairman of IOS's board and had previously been IOS's CEO. Id. at ¶3(d). Lance Furr was an IOS executive vice president, board member, and chief financial officer ("CFO"). Id. at ¶3(e). Steven Furr was an IOS executive vice president, board member, and president of IOS's North American operations. A11, ¶3(f). The superseding indictment also charged William Babler, another IOS CFO, Howard McKay, an IOS consultant and sales manager, Ovidio Enriquez and David Howard, both IOS

plant managers, James Currey, the president of IOS's outside information technology firm and IOS's chief operating officer for data services, and Daxesh Patel and Bharatkumar Patel, executives at Riya Coupon Services, LLC, a coupon broker. Id. at ¶¶3(g)-(k) and 4(a)-(b).

Like the original indictment, the superseding indictment contained 25 counts of wire fraud against all of the defendants, but added a 26th count of conspiracy to commit wire fraud against all defendants, and a 27th count for conspiracy to obstruct justice against defendants Thomas Balsiger, Bruce Furr, Lance Furr, William Babler, Ovidio Enriquez, David Howard, and James Currey. A24, 26.

The superseding indictment charged that IOS and its employees had conducted a fraud scheme that defrauded manufacturers by obtaining coupons that had never actually been used by a consumer and then submitting them to those manufacturers through the accounts of retailers. A9-33 at, e.g., ¶¶1, 11, 12, 16, 17, 20, 24. The superseding indictment explains that manufacturers have various controls to prevent fraud, but the IOS scheme was designed to evade such fraud controls. A13-14, ¶¶14-16. Among the ways the defendants defrauded manufacturers was the submission of coupons to manufacturers that IOS had charged back to retailers as already having been denied by the manufacturers. A14, ¶16(d). When manufacturers detected fraud notwithstanding the defendants attempts to conceal it, IOS then charged back innocent retailers the value of the coupons, plus additional fees. A13, ¶13.

The indictment alleges that several of the defendants took steps to conceal their scheme from innocent retailers whose accounts at IOS were used to launder diverted coupons. A16, ¶24. These steps included providing false and misleading information to retailers regarding the

volume of coupons billed in the retailer's name, as well as false information regarding IOS's coupon processing and invoicing practices. Id.

The superseding indictment also alleges that after the Government executed a February 2003 search warrant, IOS reduced the number of fraudulent coupons it was submitting to manufacturers which, in turn, led to greater detection of the fraud by the manufacturers. A17, ¶28. Among other responses to this greater detection, the defendants developed a computer program to fraudulently shift charge backs to innocent retailers. A17-18, ¶28(d).

## ARGUMENT

### I. Proceedings In This Action Should Be Stayed Until Completion Of The Related Criminal Proceedings

This Court and its predecessor court have recognized the wisdom of staying civil actions pending criminal investigations and prosecutions, in order to avoid the conflicts inherent in concurrent proceedings. See e.g., Luigi Goldstein, Inc. v. United States, 217 Ct. Cl. 733, cert. denied, 439 U.S. 1002 (1978); Litton Sys., Inc. v. United States, 215 Ct. Cl. 1056 (1978); C3, Inc. v. United States, 5 Cl. Ct. 659 (1984); see also Afro-Lecon, Inc. v. United States, 820 F.2d 1198 (Fed. Cir. 1987). In Peden v. United States, 206 Ct. Cl. 329, 338-39, 512 F.2d 1099, 1103 (1975), the Court of Claims stated that:

> We believe it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way. . . .
>
> [This practice] rises out of a sense that deferrable civil proceedings constitute improper interference with the criminal proceedings if they churn over the same evidentiary material.

In Litton, where the contractor was seeking payment under a contract that had been under investigation for fraud, the Court of Claims noted:

> It seems clear that in resolution of this suit the court will have to determine whether [the contractor's] claim was false or fraudulent and that this determination will require a great deal of overlap of witnesses and other evidence with the criminal prosecution. . . .

Litton, 215 Ct. Cl. at 1057 - 58. The Court of Claims stayed the civil action, pending a determination whether a criminal prosecution could be undertaken. Id. Similarly, in Luigi Goldstein, the Court of Claims held that a stay would be appropriate, stating that it "is reluctant to require the Government to proceed in civil litigation when related criminal procedures are still in progress." 217 Ct. Cl. at 734.

In this case, as the indictment makes clear, the fraud perpetrated by IOS and its owners and executives involves a large number of manufacturers and retailers who were victims of IOS's fraud, not all of whom are specifically named in the indictment. See, e.g., A15, ¶17(b) (listing "larger retail clients"). Defendant's counsel has discussed this case with the Assistant United States Attorneys representing the Government in the district court criminal proceedings, Richard Frohling and Stephen Ingraham. As a result of these discussions, defendant's counsel understands that fraud committed by IOS upon AAFES is an active part of the ongoing criminal investigation and proceedings in the district court.

Documents that AAFES has uncovered during the ongoing audit indicate that at least some of the charge backs made by IOS to AAFES are consistent with the allegations in the superseding indictment. For example, the superseding indictment explains that manufacturers have defenses against fraud, such as refusing to pay for coupons that appear to have been "gang"

or "mass" cut. A14, ¶14(e). It further alleges that when manufacturers discovered IOS's fraud and refused to pay IOS for suspect coupons, IOS then "charged back" these amounts to retailers. A13, ¶13. These allegations are consistent with charge backs discovered by AAFES's auditors where IOS stated that the reason for the charge back of the coupon was "the physical appearance is suspect." A1. Thus, at least some of the evidence in this case appears to overlap with the criminal case.

At least some of the key witnesses in this case also overlap with the criminal proceeding. In the 2004-06 time period when AAFES and IOS were discussing the disputed charge backs, IOS communicated to AAFES through Debby Flynn, an IOS client services manager and Steven Furr. Mr. Furr is charged in counts one to 26 of the superseding indictment. A9. Ms. Flynn is a cooperating witness in the criminal proceeding. In addition, the superseding indictment charges that criminal defendants Chris Balsiger and James Currey "developed a computer program to fraudulently shift chargebacks from non-paying stores to legitimate retailers that had no relation to 'charge backs' at issue." A18, ¶28(d). Finally, defendant Howard McKay executed the AAFES contract upon behalf of IOS. If the civil case were to proceed, the United States likely would seek to depose at least Mr. Furr, Ms. Flynn, and Mr. Currey. In addition, the United States may also seek to depose Mr. Balsiger, and other witnesses such as Bruce Furr and Lance Furr as the case develops.

Accordingly, a stay is appropriate here, because there is a substantial overlap of witnesses and documentary evidence in the criminal and civil proceedings. See Litton Sys., 215 Ct. Cl. at 1058-59; C3, 5 Cl. Ct. at 661; Afro-Lecon, 820 F.2d at 1204.

In the alternative, if the Court denies defendant's motion to stay, defendant respectfully requests that the Court cancel the current schedule for briefing on the Government's motion for summary judgment and establish a schedule for discovery. The Government will be prejudiced if it is forced to proceed with a summary judgment motion without knowing whether some or all of the charge backs from IOS to AAFES were fraudulent. Because defendant has not conducted discovery in this matter, defendant does not know what amount, if any, of the charge backs from IOS to AAFES were for an actual refusal to pay by a manufacturer for coupons submitted by AAFES to IOS for which IOS had advanced payment to AAFES. Based upon the allegations in the criminal proceedings and the documents uncovered by the auditors to date, if this case is not stayed the Government will need to examine the history of IOS charge backs and determine if any of them were fraudulent.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court stay this matter pending the outcome of criminal proceedings in the district court.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:

MAJOR DARA C. LEAVITT
Assistant General Counsel
- Commercial & Financial Law
HQ AAFES

s/ Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L St., N.W., 8th floor
Washington, D.C. 20530
Tel: (202) 353-1618
Fax: (202) 514-8624

August 7, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 7th day of August, 2008, a copy of the foregoing "Motion to Stay" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Michael N. O'Connell