No. 08-70C
(Judge Hewitt)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

INTERNATIONAL OUTSOURCING SERVICES, LLC,

Plaintiff,

vs.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR RECONSIDERATION

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L St., N.W., 8th floor
Washington, D.C. 20530
Tel: (202) 353-1618
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MAJOR DARA C. LEAVITT
Assistant General Counsel
- Commercial & Financial Law
HQ AAFES

August 22, 2008

## TABLE OF CONTENTS

DEFENDANT'S BRIEF. . . . . . 1

QUESTION PRESENTED. . . . . . 1

PRELIMINARY STATEMENT. . . . . . 1

STATEMENT OF THE CASE. . . . . . 4

I. Nature Of The Case. . . . . . 4

II. Statement Of Facts . . . . . . 4

ARGUMENT. . . . . . 6

I. The Standard . . . . . . 6

II. IOS's Opposition To The Motion To Stay Is Inconsistent With The Positions IOS And Its Officers Have Taken In The District Court . . . . . . 6

III. The Government Will Be Prejudiced If This Matter Is Not Stayed . . . . . . 12

IV. The Government Is Not In A Position To Propose Uncontroverted Facts To The Court . . . . . . 14

CONCLUSION . . . . . . 19

## TABLE OF AUTHORITIES

**CASES**

American Express Business Finance Corp. v. RW Professional Leasing Services Corp.,
225 F.Supp.2d 263 (E.D. N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Beiersdorf, et al. v. IOS, et al.,
E. Dist. Wisc. No. 07-C-0888. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 20

Berdick v. United States,
612 F.2d 533 (Ct. Cl. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Campbell v. Eastland,
307 F.2d 478 (5th Cir. 1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Citizens Federal Bank, FSB v. United States,
53 Fed. Cl. 793 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cuyahoga Metropolitan Housing Authority v. United States,
65 Fed. Cl. 534 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Data Gen. Corp. v. Johnson,
78 F.3d 1556 (Fed. Cir.1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Litton Systems, Inc. v. United States,
215 Ct. Cl. 1056 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Luigi Goldstein, Inc. v. United States,
217 Ct. Cl. 733 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Montana Food Distributors Assoc. v. International Outsourcing Services, LLC, et al.,
E. Dist. Wisc. No. 08-C-0457. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Morse Diesel Intern., Inc. v. United States,
74 Fed. Cl. 601 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

New Hampshire v. Maine,
532 U.S. 742 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Peden v. United States,
512 F.2d 1099 (Ct. Cl. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Strickland v. United States,
36 Fed. Cl. 651 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Supermex, Inc. v. United States,
35 Fed. Cl. 29 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U.S. v. All Meat and Poultry Products,
2003 WL 22284318 (N.D. Ill. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

28 U.S.C. § 1491(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 2514. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

41 U.S.C. § 609(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL OUTSOURCING SERVICES, LLC, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 08-70C |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION**

Pursuant to Rule 59 of the Rules of the United States Court of Federal Claims, defendant respectfully requests that the Court reconsider its order denying without prejudice the Government's motion to stay, or, in the alternative, cancel the summary judgement briefing schedule.

DEFENDANT'S BRIEF

QUESTION PRESENTED

Whether the Court should reconsider its order denying without prejudice the Government's motion to stay proceedings in this matter, or, in the alternative, cancel the summary judgement briefing schedule, pending completion of a related criminal proceeding being conducted in the United States District Court for the Eastern District of Wisconsin.

PRELIMINARY STATEMENT

The Government is filing this motion for reconsideration for four reasons. First, the Government has been surprised by the opposition of International Outsourcing Services, LLC, (IOS) to our motion to stay. In the district court, the Government agreed to a dismissal without prejudice of the indictment of IOS (subject to re-indictment) based upon IOS entering into a

cooperation agreement with the Government. This cooperation agreement provided that "IOS agrees to cooperate completely in the ongoing investigation and prosecution of individuals concerning the fraud scheme charged in the above-captioned case (the 'Indicted Cases') as well as in the investigation and prosecution of persons associated with IOS for possible obstruction of justice both before and after the indictment in this case. . . ." Yet, by opposing a stay in this matter, IOS is opening the Government to discovery that could not be obtained in the criminal case. In addition, IOS is exposing the Government to rulings by this Court that could prejudice the Government's position in the criminal case.

Further, as we will establish below, we were surprised by IOS's opposition because the arguments that the Government made in the motion to stay simply echoed the arguments that IOS and its former owners/officers have made to the United States District Court for the Eastern District of Wisconsin in support of motions to stay two separate civil proceedings. In opposing our motion to stay, IOS is now turning its own arguments on their head and asserting to this Court that its own arguments lacked merit.

Second, the Government was prejudiced by the manner in which the Court heard argument on the motion to stay at the status conference on August 18, 2008. IOS did not file an opposition to our motion. The only knowledge that the Government had concerning IOS's position came from the motions to stay that IOS and its former owners/officers filed in district court, along with the recognition that the Government's position here was consistent with the positions that IOS took in those proceedings. The Government had less than two hours notice of the status conference. When Government counsel discussed his availability for the status conference with lead counsel for IOS in the late morning on August 18, Government counsel

specifically asked why IOS was requesting a status conference. IOS's lead counsel did not disclose that IOS was seeking to argue the merits of the motion to stay although he knew, or reasonably should have known as lead counsel, that his co-counsel intended to argue the merits of the motion to stay. The Court seemingly was unaware of these events because it asked the Government to speak first at the status conference even though we did not request the status conference, nor did we know the true purpose for which IOS had requested the status conference. The Government seeks now to respond to IOS's arguments that we heard for the first time at the status conference and contrast IOS's position here with those that it has taken in the district court.

Third, the Government is simply not in the position to file a dispositive motion requesting liability. In order to file such a motion, counsel for the Government needs to determine under Rule 11 sufficient uncontroverted facts to support summary judgment. We set out below the contract elements that must be met for IOS to charge back the Government and explain why we are not in a position to propose findings of uncontroverted fact.

Fourth, it appears at the moment that the Government's rights may not be vindicated by a contract claim alone. For this reason, the Government cannot proceed with a summary judgment motion because, if the Government were later to proceed with civil fraud claims in the district court, IOS likely would argue that such claims are barred because they were mandatory counterclaims in this Court. Finally, the Government cannot proceed with a summary judgment proceeding here and ask the Court to enter judgment on an incomplete record because any rulings on such an incomplete record potentially could prejudice the Government in the criminal case.

## STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiff, International Outsourcing Services, LLC ("IOS"), filed this action pursuant to 28 U.S.C. § 1491(a) and 41 U.S.C. § 609(a). Complaint ("Co.") at page 1. Specifically, the complaint challenges a final decision of a contracting officer of the Army & Air Force Exchange Service ("AAFES") that demanded IOS repay $596,865.37 that IOS had withheld from payments to AAFES during performance of the contract. Co. Exhibit A.

II. Statement Of Facts

In December 2000, AAFES and IOS entered into a contract providing that IOS would perform coupon redemption services for AAFES. Co. ¶ 2. The contract provided that IOS, for a fee of $8.45 per 1,000 redeemed coupons, would secure redemption of coupons used by customers at AAFES's retail stores. Co. ¶¶ 2-3. The contract required IOS to pay AAFES the face value of the coupons within 30 days of receipt of those coupons. Co. ¶ 5.

In certain circumstances, the contract allowed IOS to deduct from future payments ("charge back") to AAFES the value of coupons for which IOS was unable to obtain reimbursement from the issuer of the coupon. Co. ¶ 7; Counterclaim ("CC") ¶ 5. A dispute arose between the parties concerning amounts deducted from payments by IOS to AAFES during the course of the contract. Co. ¶¶ 11-22. AAFES contends that these deductions were improper. The contract is attached at appendix ("A") pages 1-38. In relevant part, the contract provides:

> 4. Unredeemable Coupons:
>
> a. If the contractor is unable to obtain payment from the issuing manufacturer, AAFES authorizes the contractor to deduct the value of such coupons due from subsequent payments. Contractor will

> not charge for unredeemed coupons returned to AAFES and must support any returns with a statement of explanation.
> Non-redeemable coupons will be returned to AAFES, sorted and packaged, for forwarding by AAFES to the issuing manufacturer.
> Contractor will provide the following information for all deductions:
>
> Applicable forwarding exchange
> Document number
> Fiscal Period Ending
> Dollar value of adjustment broken by count and face value
>
> In the absence of the physical coupon, the contractor will submit to AAFES, a statement from the issuing manufacturer regarding the non-redemption of such coupon.
>
> b. As deemed necessary, and at the request of AAFES, the contractor will request that the respective coupon manufacturer provide rejected coupons (e.g. expired coupons, INAD, physical appearance, etc.) for review. If actual coupons are not available, a printed report will be provided, listing appropriate data supporting the reason the coupons were rejected.

A28.

On June 30, 2008, the Court ordered defendant to file a dispositive motion on liability by August 22, 2008. On August 7, 2008, defendant filed a motion to stay, or in the alternative, to cancel the summary judgment briefing schedule. After a status conference conducted on August 18, 2008, the Court denied defendant's motion to stay, or in the alternative, to cancel the summary judgment briefing schedule, without prejudice.

## ARGUMENT

I. The Standard

Rule 59(a)(1) of the Court of Federal Claims ("RCFC") states: "A new trial or rehearing or reconsideration may be granted . . . for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). "For a movant to prevail, he must point to a 'manifest error of law, or mistake of fact' and demonstrate that the motion 'is not intended to give an unhappy litigant an additional chance to sway the court.'" Strickland v. United States, 36 Fed. Cl. 651, 657 (1996) (citations omitted). A motion for reconsideration may not be used as a guise to obtain a second bite at the litigation apple. See Citizens Federal Bank, FSB v. United States, 53 Fed. Cl. 793, 794 (2002).

II. IOS's Opposition To The Motion To Stay Is Inconsistent With The Positions IOS And Its Officers Have Taken In The District Court

In the motion to stay, and at the status conference on August 18, 2008, the arguments that the Government raised in support of its motion included the overlap of witnesses in this case and the criminal case, the likely difficulty the Government would face in gathering evidence from former owners, officers, employees, and contractors of IOS because they are under indictment in a district court, and the overlap of evidence in the two cases. Counsel for IOS opposed these considerations at the status conference, arguing, among other things, that IOS is currently not a defendant in the criminal case.

The Government is surprised by IOS's opposition to the motion to stay and its opposition to the Government's arguments because our arguments here are fully consistent with those made by IOS and its former officers in at least two other civil cases. In Montana Food Distributors

Assoc. v. International Outsourcing Services, LLC, et al., E. Dist. Wisc. No. 08-C-0457, a class of plaintiffs alleges that IOS and others "conspired to (a) breach fiduciary agreements and/or obligations with retailer, state association, and wholesale customers, ... and (d) defraud customers to minimize the amount customers received from manufacturers for coupons redeemed at retail stores." A39.[1] Among other things, and similar to the criminal case and AAFES's concerns here, the complaint alleges that IOS submitted coupons to manufacturers even though it had already charged back those coupons to innocent retailers, and that IOS had developed a computer program to shift charge backs to innocent retailers. A53-54, 60, ¶¶ 48, 70.

In Montana Food, on July 30, 2008 (eight days before the Government filed its motion to stay), IOS filed a motion to stay the matter for exactly the same reasons that the Government argued in favor of the stay here. In fact, IOS made the arguments in support of its motion to stay so persuasively that we will quote them at length. First, IOS summarized its argument as follows:

> The allegations in the Montana Foods Complaint assert facts that significantly overlap with the pending criminal proceeding and relate to subject matter significantly intertwined with the criminal case. All of the pertinent witnesses from IOS with knowledge of the facts concerning these allegations are premised on, and who would have to testify as to these facts in order for IOS to appropriately answer and mount a defense, are currently indicted. These key witnesses will not be able to testify in this civil suit without waiving their constitutionally guaranteed Fifth Amendment privilege, subjecting them to the substantial risk that their testimony could be used to aid in the criminal prosecution

[1] The class of plaintiffs in this complaint is defined as "All retailers ... in the United States that have retained or engaged IOS ... to provide coupon processing services from January 1, 1997 through the present ...." Thus, AAFES would fall under this definition of the class because it operated retail locations and had a contract with IOS during the relevant time period. A60 at ¶72.

> against them. If they choose to exercise their Fifth Amendment rights, as they are likely to, then IOS will have not have an adequate opportunity to mount a meaningful defense. As a result, this matter should be stayed pending the outcome of the criminal action.

A102-03. These arguments are similar to those the Government has made here. Compare quoted text above with the Government's motion to stay at 5-8 (arguing that there is a substantial overlap of evidence and witnesses in this case and the criminal case). Further, not only do the facts and witnesses in this case and the criminal case overlap, but similar to the Government's statements at the status conference, it is likely that evidence cannot be obtained from the "key" witnesses at IOS because they "will not be able to testify in this civil suit" without waiving their rights pursuant to the Fifth Amendment, just as IOS argued in the district court.

IOS further argued to the district court in Montana Food:

> Parallel civil and criminal proceedings create an untenable conflict for the individuals who are indicted and will be involved in this case. On one hand, in order for IOS to adequately defend itself in this lawsuit, it will need the testimony of its former members who were in charge of the company. . . . On the other hand, if they assert their Fifth Amendment privileges in the civil suit, their silence could be used against IOS, allowing the jury to draw an adverse inference against it, thus preventing IOS from adequately defending itself. [Citations omitted]
>
> Courts cut this Gordian knot by holding that the civil suit should be stayed pending the outcome of the criminal proceedings where overlapping facts and subject matter exist between cases. [Citations omitted].

A103-04.

In our view, it is simply inexplicable that IOS could contend to the district court that it would be prejudiced if its former owners/officers were called to testify in a civil case between

private parties while contending that there is no comparable consideration where the opposing party is the Government and is represented by the Department of Justice. Certainly, the involvement of the Department of Justice in this case would not make it less likely that the key witnesses will invoke the Fifth Amendment.

In addition to the considerations raised by IOS in the quoted text, the Government is concerned about its own ability to gather evidence through discovery and the effect that witnesses asserting a Fifth Amendment privilege would have upon the Government's ability to gather evidence. As IOS argued in its brief, "[i]t is safe to assume that they [indicted IOS officers] are likely to invoke the Fifth Amendment . . . ." A109.

Finally, at the status conference, IOS also argued that this matter should not be stayed because IOS is no longer a defendant in the criminal case. However, this argument again is in direct contradiction to an argument it made to the district court in Montana Food in support of its motion to stay:

> Additionally, courts have held that where only individuals are indicted, but a corporation will be unable to mount a defense in a related civil case because the key witnesses will invoke the Fifth Amendment, the better course is to grant a stay. *U.S. v. All Meat and Poultry Products*, 2003 WL 22284318, *4 (N.D. Ill. 2003) ("In such instances as here, where the indicted individual defendants appear to be the central figures in both the civil and criminal proceedings, courts have determined that the better course is to enter a stay as to all defendants") citing *American Express Business Finance Corp. v. RW Professional Leasing Services Corp.*, 225 F.Supp.2d 263, 265 (E.D. N.Y. 2002).

A105. The Government does not understand how IOS could make this contention in the district court where it apparently does not see the same considerations here. However, as stated above, the Government's concern is its ability to gather evidence from witnesses under indictment.[2]

In the other district court civil case at issue, Beiersdorf, et al. v. IOS, et al., E. Dist. Wisc. No. 07-C-0888, a group of approximately 25 manufacturers filed a complaint alleging that IOS and its former owners, officers, and employees had "engaged in an enterprise whereby they conspired to defraud and did defraud consumer product manufacturers of hundreds of millions of dollars." A117. The complaint charged IOS and its officers/employees with violations of the Racketeer Influenced and Corrupt Organizations Act, common law fraud, and other causes of action. Id. The complaint, like the criminal case, alleged, among other things, that "[a]lthough the Defendant's scheme was multi-faceted, at its most fundamental level it involved simply augmenting the substantial volumes of properly-redeemed coupons that IOS received from certain of its major retailer clients with other coupons that IOS acquired, and then fraudulently submitting the entire batch as if all of the coupons had been redeemed legitimately by consumers at the designated retailer." A126 at ¶46.

In Beiersdorf, defendants Steven Furr (IOS executive vice president, board member, and president of IOS's North American operations), Bruce Furr (chairman of IOS's board and previously been IOS's CEO), Lance Furr (an IOS executive vice president, board member, and chief financial officer), and William Babler (another IOS chief financial officer) filed a motion to stay pending the resolution of the parallel criminal proceeding. A150. Like in the Montana Food

---

[2] The docket indicates that the parties have stipulated that the plaintiffs have until September 18, 2008 to respond to IOS's motion to stay.

case, their brief emphasized the similarity of the criminal case and the Beiersdorf matter, as well as their need to protect their rights against self-incrimination under the Fifth Amendment. A152-56. Subsequently, these defendants, now joined by defendants Thomas Balsiger (IOS's president, chief operating officer and later chief executive officer), Ovidio Enriquez and David Howard (both IOS plant managers), James Currey (president of IOS's outside information technology firm and IOS's chief operating officer for data services), and Howard McKay (an IOS consultant and sales manager, according to the complaint (A123 at ¶31)), and the plaintiffs stipulated to a stay. A157. At paragraph 12, the stipulation referenced a pending motion and stated that once the Court decided that motion and other motions, "Individual Defendants and Plaintiffs will jointly move to stay the Civil Action with respect to all parties. . . ." A163.

Less than two months later, after deciding several pending motions in a single order, the Court, referencing paragraph 12 of the joint stipulation concerning the stay, stated that "it presumes that the parties will now move for a stay with regard to this entire case, pending the resolution of the ongoing criminal matter (Case No. 07-CR-057 (E.D. Wis.)). Unless and until the Court hears otherwise, this matter is STAYED." A183. There is no entry on the docket indicating that IOS has requested that this stay be lifted.

The doctrine of judicial estoppel provides "that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." Cuyahoga Metropolitan Housing Authority v. United States, 65 Fed. Cl. 534, 554 (2005) (quoting Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir.1996)). The decision whether to invoke judicial estoppel "lies within the court's discretion." Id. (quoting Data General Corp., 78 F.3d at 1565). Several factors

inform a court's decision to apply the doctrine in a particular case. First, "a party's later position must be 'clearly inconsistent' with its earlier position." Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). Second, "courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." Id. Finally, "[a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. (quoting New Hampshire, 532 U.S. at 751).

In this case, all of these factors are present. IOS's opposition to a stay here is manifestly different from the position it and its former officers/employees have taken in the district court. These different positions could create the perception that either the district court or this Court has been misled by their conflicting arguments concerning the overlap of facts and witnesses in this case and the criminal case, the impact on a civil case of witnesses taking the Fifth Amendment, and the fact that IOS is currently not a defendant in the criminal case. Finally, IOS would derive an unfair advantage if it is not estopped because, as discussed above, the Government cannot proceed in this case in a manner that would jeopardize its position in the criminal case, nor can it risk limiting its ability to assert civil fraud claims against IOS.

## III. The Government Will Be Prejudiced If This Matter Is Not Stayed

Precedent in this circuit establishes that the courts recognize the wisdom of staying civil actions pending criminal investigations and prosecution of the parties and issues involved, in order to avoid the conflicts inherent in concurrent proceedings. E.g., Luigi Goldstein, Inc. v. United States, 217 Ct. Cl. 733 (1978); Peden v. United States, 512 F.2d 1099, 1103 (Ct. Cl.

1975) (public interest in law enforcement mandates that criminal proceedings be given priority over concurrent civil proceedings); Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962) (hardship to parties generally arises from considerably narrower scope of discovery prevailing in criminal cases).

In addition to the reasons stated elsewhere in this brief, there are three fundamental reasons why this Court should stay this proceeding until the completion of the criminal case. First, a stay would prevent the use of civil discovery rules for criminal discovery purposes or to obstruct the prosecution. E.g., Peden, 512 F.2d at 1103; Litton Systems, Inc. v. United States, 215 Ct. Cl. 1056, 1058-59 (1978); Luigi Goldstein, Inc. v. United States, 217 Ct. Cl. at 734. IOS is supposed to be cooperating with the Government in the criminal case, yet it is opposing a stay here which could cause hardship to the Government because of the greater scope of discovery allowed in a civil case.

Second, a stay may obtain the economies resulting from the doctrine of collateral estoppel. E.g., Berdick v. United States, 612 F.2d 533, 537 (Ct. Cl. 1979). As we established in the preceding section of this brief, IOS itself has detailed the similarities between the civil cases that allege improper charge backs for coupons/improper claims to manufacturers and the criminal case. As we set forth in the following section, if it were established in the criminal case that IOS fraudulently charged back any coupons to AAFES, the Government would be entitled to the dismissal of IOS's complaint without the Court ever considering IOS's contract claim.

Third, in light of the conflicting positions that IOS has taken in the district court civil cases, IOS's strategy now is apparent. It is attempting to push the Government into filing a premature motion for summary judgment before the Government can establish through an audit

and discovery a fraud claim. This is an attempt to obtain a ruling in this Court based upon an incomplete record that can be used to the advantage of IOS in the event of future civil fraud proceedings (by claiming res judicata). A ruling by the Court upon such an incomplete record could also improperly benefit IOS's officers/employees in the district court criminal proceeding.

No other explanation for IOS's opposition to our motion to stay makes sense in light of the motions IOS has filed in the district court. IOS stands to receive no damages even if it wins this case because it is the Government that is seeking payment in this action, not IOS. Thus, there is no prejudice to IOS that would be caused by a stay of this action.

IV. <u>The Government Is Not In A Position To Propose Uncontroverted Facts To The Court</u>

At the status conference on August 18, 2008, the Court suggested that one reason that defendant could proceed with a motion for summary judgment is that this dispute is contractual. However, based upon the revelations of the criminal case and our audit to date, the Government currently is examining this matter as a potential fraud case. If we seek and receive authority to file a motion to assert fraud counterclaims, the Court may never reach the contractual issues. <u>E.g.</u>, <u>Supermex, Inc. v. United States</u>, 35 Fed. Cl. 29, 40 (1996) (the special plea in fraud statute, 28 U.S.C. § 2514, requires the forfeiture of all claims arising under a contract tainted by fraud against the Government). Even if the amount of the fraud is very small compared to the claim as a whole, the entire claim is still forfeited. <u>E.g.</u>, <u>Morse Diesel Intern., Inc. v. United States</u>, 74 Fed. Cl. 601, 635 (2007). Accordingly, if our investigation finds even one fraudulent coupon, the Court need not reach the contract issues.

To the extent that the Court ever considers contractual issues, defendant is not in a position to file a motion for summary judgment because the Government cannot at this time

represent to the Court pursuant to Rule 11 that there are sufficient uncontroverted facts for the Court to enter summary judgment in favor of the Government upon liability.

Pursuant to the contract, IOS had a right to charge back AAFES when the following facts had occurred:

1. IOS paid AAFES for the coupon in question;
2. IOS presented the coupon to the relevant manufacturer, which refused to pay IOS for the coupon;
3. IOS provided AAFES the applicable forwarding exchange, the document number, fiscal period ending, and the dollar value of adjustment broken by count and face value;
4. IOS provided the coupon in question to AAFES, or provided a statement to AAFES from the manufacturer regarding the non-redemption of the coupon; and
5. For rejected coupons, IOS had, at AAFES's request, provided the coupons to AAFES or, in the event that the actual coupons were not available, a printed report listing appropriate data supporting the reason the coupons were rejected.

A28. These issues are subject to the Government's ongoing audit. Until the audit is completed, along with any necessary discovery, the Government will not be in a position to propose to the Court uncontroverted facts concerning any of the five requirements of the contract.

First, with respect to the issue of IOS's previous payment to AAFES for the coupon upon which the charge back is based, the Government has not established whether IOS ever paid AAFES in the first instance for the coupons at issue. This is particularly important now that the Government has learned that, in the criminal case in the Eastern District of Wisconsin, a grand jury has charged IOS's former owners and employees with charging back amounts to innocent retailers after manufacturers had rejected coupons for fraud, and that IOS's former president is

charged with creating a computer program that fraudulently shifted charge backs to innocent retailers. Appendix to motion to stay at 13, 18 (MSA 13, 18). It now appears possible that IOS submitted charge backs to AAFES for coupons for which it had never advanced payment to AAFES. This issue is a subject of the ongoing audit by AAFES, but the Government may also require discovery on this issue from IOS, its former owners, officers, or employees, or third parties.

Second, IOS's right to charge back AAFES arises when a manufacturer has refused to pay IOS for the coupon. Specifically, paragraph 4(a) of the scope of services quoted above, provides in relevant part that "[i]f the contractor is unable to obtain payment from the issuing manufacturer. . ." IOS may charge back the Government. The Government is not in a position to state whether the threshold condition that IOS was unable to obtain payment from the relevant manufacturer ever occurred for any of the charge backs at issue. Certainly, the Government would agree that IOS presented charge backs to the Government based upon the representation that it was unable to obtain payment from the manufacturer, but because the Government has not taken any discovery from the manufacturers, the Government is not in a position to propose uncontroverted facts to the Court based upon whether or not any particular charge back was the subject of an actual refusal to pay by a manufacturer. This issue is also of particular importance to the Government given the allegations in the criminal case concerning IOS's charge backs to innocent retailers.

For example, in our motion to stay we provided the Court with an example of a charge back from IOS to AAFES in which the listed reason for the charge back was "the physical appearance [of the coupon] is suspect." MSA 1. As we stated in our motion to stay, the

superseding indictment explains that manufacturers have defenses against fraud, such as refusing to pay for coupons that appear to have been "gang" or "mass" cut. MSA 14, ¶14(e). The superseding indictment further alleges that when manufacturers discovered IOS's fraud and refused to pay IOS for suspect coupons, IOS then charged back these amounts to retailers. MSA 13, ¶13. These allegations are consistent with charge backs discovered by AAFES's auditors where IOS stated that the reason for the charge back of the coupon was "the physical appearance is suspect." MSA A1. Thus, it is possible that AAFES was improperly charged back for coupons that IOS had falsely presented to manufacturers as having been used at one of AAFES's retail stores.

At this point in time, the Government does not know whether the manufacturer at issue in the charge back at MSA 1 actually refused to pay AAFES with respect to a coupon for which IOS had already paid AAFES. Thus, we do not know whether the threshold condition in the contract, that is, a manufacturer's refusal to pay, has occurred.

Similarly, the Government also does not possess this information with respect to other charge backs from IOS. In paragraph seven of the Government's counterclaim, we alleged that some IOS charge backs contained no explanation for the charge back, while others stated that they were for the reason "coupon count/value adj (-)." Counterclaim ¶ 7. At the present time, we do not know if the threshold condition, that is, a manufacturer's refusal to pay, occurred for either of these types of charge backs. Furthermore, with respect to the Government's allegation that some IOS charge backs did not provide an explanation, IOS denies this allegation in paragraph seven of its reply to the Government's counterclaim, possibly placing a material fact in dispute.

Finally, with respect to the third, fourth, and fifth requirements of the contract, that IOS must provide certain information to AAFES with the charge back and must provide either the rejected coupon or a statement from the manufacturer, these issues are also subject to the ongoing audit. Based upon the information we have received to date from the auditors, it appears that IOS charged back the Government for a variety of purported reasons. In addition to those mentioned above, additional reasons for the charge backs include "abnormal coupon mix", "held for review", "store does not stock product", "claimed face val. exceeds max allowed", "expired coupons", "retailer out of coupon distribution area", and "ineligible in-ad coupon." The audit is currently gathering information on all of these issues. According to the agency, at least some of the charge backs were not accompanied by the actual coupon at issue. This again raises the question as to what transpired between IOS and the manufacturer and may need to be the subject of discovery between the Government and the manufacturer.

We have listed in the preceding paragraphs 10 reasons for IOS charge backs to AAFES. These would present 10 separate analyses for summary judgment purposes. Each analysis would, in turn be subject to underlying scenarios such as whether IOS provided the coupon to AAFES, whether IOS provided a statement from the manufacturer concerning the rejection, whether IOS provided AAFES required information such as the applicable forwarding exchange, whether IOS had paid AAFES for the coupon, and whether IOS presented the coupon to the manufacturer, which refused payment. Until these facts can be developed through the audit and discovery, we will not be in a position to file a motion for summary judgment.

Accordingly, because the Government is not in position pursuant to RCFC 11 to propose sufficient uncontroverted findings to support a motion for summary judgment, and because the

Government cannot risk prejudicing its position with respect to its fraud remedies or the criminal case by filing a motion based upon an incomplete record in this case, we cannot file a motion for summary judgment at this time and respectfully request that the Court reconsider its order denying the motion to stay.

## CONCLUSION

For the foregoing reasons, the Government requests that the Court reconsider its order dated August 18, 2008, and stay this matter. In the alternative, the Government requests that the Court establish a reasonable schedule for discovery.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L St., N.W., 8th floor
Washington, D.C. 20530
Tel: (202) 353-1618
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MAJOR DARA C. LEAVITT
Assistant General Counsel
- Commercial & Financial Law
HQ AAFES

August 22, 2008

INDEX TO APPENDIX


| Document | Page(s) |
|---|---|
| Contract | 1-38 |
| Complaint Montana Food | 39-100 |
| IOS Brief In Support of Motion to Stay, Montana Food | 101-14 |
| Beiersdorf v. IOS, et al, Second Amended Complaint | 115-49 |
| Beiersdorf v. IOS, et al, Defendant’s Brief In Support of Stay | 150-56 |
| Beiersdorf v. IOS, et al, Stipulation Concerning Stay | 157-64 |
| Beiersdorf v. IOS, et al, Decision and Order | 165-83 |

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 22nd day of August, 2008, a copy of the foregoing "Motion for Reconsideration" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Michael N. O'Connell