**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **INTERNATIONAL OUTSOURCING SERVICES, LLC** | |
| **Plaintiff,** | **Case No. 08-70C** |
| | **(Judge Hewitt)** |
| **v.** | |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**PLAINTIFF'S RESPONSE TO THE GOVERNMENT'S**
**MOTION FOR RECONSIDERATION, AND REQUEST FOR RELATED RELIEF**

It is clear from the Government's recent filings that it can defend neither the factual nor mathematical basis underlying the Contracting Officer's final decision assessing contractual liability against IOS. Despite this, on June 30, 2008, the Government confidently represented to this Court that it could file a summary judgment motion. More specifically, Government counsel addressed the Court as follows: "Sure. And I think it would be a good idea to file some kind of motion for summary judgment on the issue of liability….then we can move forward with discovery on damages and so forth." (Tr. 9-10, June 30, 2008.) Based upon that statement, this Court issued a scheduling order giving the Government 52 days, or until August 22, by which to file its dispositive motion. Now, however, the Government has done a 180° reversal of position and accuses IOS of "attempting to push the Government into filing a premature motion for summary judgment before the Government can establish through an audit and discovery a fraud claim." (Def.'s Motion 13-14, Aug. 22, 2008.) Aside from being factually untrue, this charge confirms, conclusively, that without an audit and/or discovery fishing expedition (5-9 years after

contract performance was completed), the Government continues to have no basis for assessing liability against IOS in what from the outset has been nothing but a contract dispute.

Moreover, in lodging the serious accusation that IOS is "pushing a premature motion to avoid fraud", the Government ignores the fact that filing a summary judgment motion was its own recommendation on June 30 when the Court issued its order. This argument should give this Court some indication as to the extremes to which the Government will go to impugn IOS rather than addressing the substance of the AAFES Contracting Officer's claims against IOS. In fashioning any relief based upon the Government's Motion, this Court has inherent authority under RCFC 1 to condition such relief to ensure a "just, speedy, and inexpensive determination" of this action. The Supreme Court has observed that RCFC 1 reflects a "national policy . . . to minimize the costs of litigation." Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 234 (1964). IOS asks that this basic principle be applied in this instance.

The Government argues now that it is in no position to file a dispositive motion on contract liability founded on the AAFES Contracting Officer's final decision. This argument is surprising, not solely because it has never been made before, but rather, because it now appears that, contrary to what the Government represented to the Court on June 30, the Government actually has no valid basis upon which to submit a summary judgment motion. ("…[T]he Government is simply not in the position to file a dispositive motion…." (Def.'s Motion 3, Aug. 22, 2008; see also id. 14-15, 18.) If the Government is not able to articulate a basis for summary judgment, it obviously cannot be made to do so. However, instead of wasting nearly two months of time, the Government owed a duty to the Court to candidly convey this in advance, before the actual date a required court-scheduled pleading is due, and rather than filing over 250 pages of

argument and records having no place in this action. IOS respectfully submitted to the Court on June 30 and again on August 18, that the Government's representation that the contract language would support its summary judgment motion was simply untrue. Given what the Government now finds convenient to argue ("…[T]here's very little that I know about the case at this point") (Tr. 5, Aug. 18, 2008), leading the Court back on June 30 to believe that "it would be a good idea to file some kind of motion for summary judgment…" (Tr. 9, June 30, 2008) is hard to understand. Indeed, the Government's Motion for Reconsideration concedes that it is uncertain about the following critical facts that formed the foundation of AAFES' contractual claim against IOS in the first place:

- "[T]he Government has not established whether IOS ever paid AAFES in the first instance for the coupons at issue." (Def.'s Motion 15, Aug. 22, 2008.) By conceding this lack of knowledge, the Government necessarily admits that IOS may have paid AAFES under the contract.
- "The Government is not in a position to state whether the threshold condition that IOS was unable to obtain payment from the relevant manufacturer ever occurred for any of the charge backs at issue." (Id. at 16.) Again, this lack of knowledge, being conveyed now, many years after the contract, instead of contemporaneously during contract performance, admits that the relevant manufacturers may have refused to pay IOS.
- "At this point in time, the Government does not know whether the manufacturer at issue in the charge back at MSA 1 actually refused to pay AAFES with respect to a coupon for which IOS had already paid AAFES." (Id. at 17.) Thus, the Government concedes that the charge back may have been proper.

- "At the present time, we do not know if the threshold condition, that is, a manufacturer's refusal to pay, occurred for either of these types of charge backs." (Id.) Again, the Government concedes that it simply does not know whether its contentions have any basis in fact.
- "[W]hat transpired between IOS and the manufacturer . . . may need to be the subject of discovery between the Government and the manufacturer." (Id. at 18.)

In sum, the Government admits that it does not have enough information to state, even on information and belief, the central elements of its claim against IOS and therefore the February 1, 2007 decision of the Contracting Officer in this case -- the decision that has launched this case for IOS, the Government, and this Court. As a result, the Government is embarking on a new investigation to devise an argument based on an allegation of "even one fraudulent coupon" (See Def.'s Motion 2, Aug. 7, 2008; Def's Motion 14, Aug. 22, 2008) out of millions processed.

In its initial June 30 status conference, this Court sought to impart some context and order to the litigation of AAFES' Contracting Officer's contract claim against IOS and, consistent with Rule 1 of this Court's Rules, to promote the "just, speedy, and inexpensive determination" of this action. The hundreds of pages of paper filed by the government in lieu of its dispositive motion cast these objectives in serious doubt. The following facts hopefully will provide this Court some context for this dispute involving five years of contract performance (1999 - 2004).

During performance, IOS processed tens of millions of coupons for AAFES. IOS would estimate that the total coupons processed during this period of time was valued at least $55 million. For IOS' services in processing annually some 7 million coupons (worth about $11 million face value), AAFES paid IOS about $60,000 annually. These coupons were processed

continuously, i.e., weekly, or about 250 separate times during the course of this five-year contract. About once a week for five years, IOS obtained over a hundred thousand coupons from AAFES for processing, organized and shipped those coupons to the respective manufacturers for redemption, and, when the manufacturer paid over monies to IOS to cover these coupons, IOS would account for such payments and pay AAFES.

Several years following this weekly ritual, on February 1, 2007, the Contracting Officer for the first time formalized the position that IOS had failed to sufficiently document contractually permitted "charge backs," or amounts the manufacturer refused to honor. This February 1 final decision rejected documented "charge backs" totaling precisely $596,865.37 -- an amount representing about 1% of the total monies IOS succeeded in recovering from the manufacturers and paying to AAFES during the five-year course of this contract. This figure obviously exceeds the total amount AAFES paid to IOS during entire 5-year life of IOS' contract. IOS has not, (and IOS does not believe it could ever) credibly question the high quality of IOS services in successfully collecting such a high percentage of the coupon claims from the many dozens of manufacturers at issue. IOS is equally confident that its record of recovery for AAFES was outstanding.

Now, in its August 7 motion the Government represents that it has just "recently began conducting an internal audit to determine the precise amount of IOS deductions that it disputes." (Def.'s Aug. 7, 2008 Motion, p. 2.) This puts into question how the Contracting Officer could have had any responsible basis for demanding, "down to the penny" $596,865.37, without first having begun to examine the facts. This Court and IOS had every reason to accept as accurate the $596,865.37 demanded in the Government's February 1, 2007 Contracting Officer's Final

Decision--the sole basis for this lawsuit. Significant time and expense have been spent as a result of that decision. At this stage, without a very strong showing by the Government that would justify yet another amount in dispute as to this now long-completed contract performance, the Government should be barred from altering yet again its claim against IOS.

The Department of Justice holds significant resources at its disposal. Those resources have already been deployed against IOS in the very preliminary stages of this litigation. IOS, on the other hand, cannot absorb significant legal costs simply to reach a stage where the Government is willing to stand responsibly behind the substance of the Contracting Officer's Final Decision in the amount of $596,865.37. This action was filed because IOS disagreed with AAFES' Final Decision and had to file this defensive suit to avoid a default judgment under the Contract Disputes Act statutory filing deadlines. Now, the Government seeks to embroil this simple contract case with unexplored allegations of fraud against AAFES in the hope that its current ruminations might uncover a single coupon upon which it can justify making a new fraud allegation.

Wholly apart from the substantive problems with injecting fraud into a garden variety contract dispute on the basis of ruminations, procedurally, the Government has gone totally beyond the outer bounds of its pleadings and this Court's rules of procedure. The Government should be constrained, as any other litigant, to what it responsibly can plead. Nothing in the Government's answer to the IOS complaint, or its counterclaim, or, for that matter, the Contracting Officer's final decision of February 1, 2007 makes any mention of fraud. If and to the extent the Government moves from conjecture to some responsible factual basis upon which to add fraud to this case--meeting the minimum standards of Rule 11-- then, and only then, should it

be permitted to add such arguments to the current dispute over proper documentation of charge backs.

This Court is inherently empowered to condition any relief it grants. At this point in time, as framed by the pleadings, this litigation stems exclusively from a Contracting Officer's final decision which, as the Court characterized it, is a "simple contract dispute". If, after examining the timing and content of the Government's representations to this Court, this Court determines that stay relief is warranted, IOS would respectfully ask, consistent with RCFC 1, that any such stay be conditioned upon the following:

(1) IOS be relieved of all claims of accrued interest stemming from delay in resolving this dispute against IOS be barred;

(2) the Government be required to pay all needless costs that have been incurred in reliance upon the accuracy of the Contracting Officer's Final Decision of February 1, 2007 demanding $596,865.37;

(3) if and to the extent it allegedly pertains to contract interpretation or performance at issue in this litigation, the Government be required to timely complete what it characterized to this Court on August 7 as a new audit;

(4) consistent with RCFC 1, the Government be required to promptly provide copies to IOS of all records that could support any new or different claims against IOS, in whatever format such records are arranged by the Government in support of any new or altered allegations or claims. This fourth condition, at a minimum, should include all of what the Government reports to this Court to be 90 boxes of related files. (Def.'s Motion 2, Aug. 7, 2008.)

(5) Further, consistent with RCFC 1, the Court should limit any stay of relief to a specific time certain, during which the Government is required, should it seek to inject criminality or fraud into this contract dispute, to timely amend its pleadings. Having initiated the statutory timetable for dispute resolution on February 1, 2007, the Government should not be permitted unlimited time in which to toy with what is and what is not before this Court for resolution.

This case goes back nine years and involved millions of pieces of paper. Neither the Parties, this Court, nor the cause of justice can be properly served if private parties are left to rely, at their peril, upon a Contracting Officer's written representations in a Final Decision, after which the Government seeks by means of unpleaded speculation, to devise a profoundly different substituted claim, particularly where the Contractor in good faith has followed the dispute resolution mechanisms mandated by the Contract Disputes Act.

Respectfully submitted,

/s/ Joe R. Reeder
JOE R. REEDER

/s/ David T. Hickey
DAVID T. HICKEY

Greenberg Traurig
2101 L Street, N.W.
Washington, D.C. 20005
(202) 331-3100

Counsel for Plaintiff
International Outsourcing Services, Inc.