IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL OUTSOURCING SERVICES, LLC, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 08-70C (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION, AND REQUEST FOR RELATED RELIEF**

Pursuant to this Court's order dated September 8, 2008, defendant respectfully submits this reply to plaintiff's response to our motion for reconsideration and plaintiff's request for related relief.

## INTRODUCTION

In our opening brief, we established that: International Outsourcing Services, LLC (IOS) should be judicially estopped from opposing the Government's motion to stay due to the inconsistent positions that IOS has taken in the district courts with respect to stays of those cases; that a stay will prevent the use of civil discovery rules for criminal discovery purposes or to obstruct the prosecution; and that a stay may obtain the economies resulting from the doctrine of collateral estoppel. Because IOS does not address these arguments in its brief, we will not elaborate upon them any more than necessary in this reply. The issues that IOS discusses in its brief, potential Government changes to the amount sought in the contracting officer's final decision and the Government's agreement on June 30, 2008 to a schedule that provided for the Government to file an early dispositive motion, have no direct relevance to the merits of our motion to stay, but we address them below.

ARGUMENT

I. IOS's Arguments Concerning The Contracting Officer's Final Decisions Lack Merit

Nearly devoid of citations to cases, statutes or regulations, IOS's brief is based upon fundamental misconceptions of law. First, although the Government has made no determination as to whether it will change the amount that it seeks from that stated in the contracting officer's final decision, IOS argues that, once the contracting officer has issued a final decision, the Government cannot depart from that decision "without a very strong showing" in favor of an alternate amount, and that a departure from the decision entitles a contractor to an award of costs. IOS Brief (Br.) at 6-7. These arguments are contrary to precedent.

It is well established that this Court's review of a contracting officer's final decision is de novo. Wilner v. United States, 24 F.3d 1397 (Fed. Cir. 1994) (en banc). As the Federal Circuit explained in Wilner "[t]he plain language of the CDA and our decision in Assurance [Co. v. United States, 813 F.2d 1202 (Fed. Cir.1987)] make it clear that when suit is brought following a contracting officer's decision, the findings of fact in that decision are not binding upon the parties and are not entitled to any deference." Wilner, 24 F.3d at 1401. Accordingly, in the context of Government claims involving a termination for default, the Federal Circuit has repeatedly held that if the reasons for the termination for default stated in the contracting officer's final decision are not sustainable, the Government is still entitled to have the decision upheld if there is some other ground for the decision. Empire Energy Management Systems, Inc. v. Roche, 362 F.3d 1343, 1357 (Fed. Cir. 2004). Thus, to the extent that IOS requests, without any citation to authority, that the Government be required to pay "costs that have been incurred in reliance upon the accuracy of the Contracting Officer's Final Decision" such a request is not only premature

because the Government has not changed the amount sought, but is also inconsistent with this precedent that expressly allows the Government to depart from the decision without penalty.

IOS also argues that "[n]othing in . . .the contracting officer's final decision of February 1, 2007 makes any mention of fraud." IOS Br. at 6. While accurate there is no such requirement for a contracting officer's final decision. The Government's right to assert fraud counterclaims in this Court is not dependent upon any discussion of fraud in the contracting officer's final decision. E.g., Martin J. Simko Const., Inc. v. United States, 852 F.2d 540 (Fed. Cir. 1988).

Finally, IOS argues that "IOS . . . cannot absorb legal costs simply to reach a stage where the Government is willing to stand" behind the contracting officer's final decision. IOS Br. at 6. IOS's complaints about its legal costs rings hollow in light of its opposition to our motion to stay. As we pointed out in our opening brief, IOS has argued to the district court that a stay is appropriate because "[i]t is safe to assume that they [indicted IOS officers] are likely to invoke the Fifth Amendment . . . ." Appendix at 109 (A109). Yet, by opposing a stay here, IOS is forcing a situation where counsel for both parties may travel across the country to depose witnesses whom IOS predicts will invoke their privilege against self-incrimination. The economies arising from a stay were also correctly identified by IOS in its district court motion to stay:

> If the stay is denied, the civil and criminal matters will proceed simultaneously presenting the high potential for duplication of judicial efforts and resources. On the other hand, if the stay is granted, then the outcome of the criminal proceeding may resolve many issues involved in the civil matter, simplifying the overall issues in the case, and possibly facilitating settlement.

A112. We agree with IOS's district court arguments. District court resolution of issues would save both parties costs, and might even facilitate settlement. Thus, if IOS is truly concerned about its legal costs, it should support a stay in this matter, just as it has requested in the district court.[1]

## II. IOS's Arguments Concerning The Schedule Established By The Government At The June 30 Status Conference

IOS criticizes the Government at length for agreeing to a schedule suggested by the Court that called for the Government to file an early dispositive motion. It accuses the Government of having "done a 180° reversal of position" and asserts that the arguments raised by the Government in its motion for reconsideration "should give this Court some indication as to the extremes to which the Government will go to impugn IOS. . . ." IOS Br. at 1-2. With respect to this latter point, we stand by our representation that IOS was indicted for defrauding its retail clients and manufacturers in the amount of $250 million. That indictment was only dismissed after IOS pledged to cooperate with prosecutors against its indicted former officers and employees. Similarly, although IOS accuses the Government of attempting to "embroil" IOS in

[1] IOS's opposition to the motion to stay and its comments during the status conference that the criminal case was "frivolous", "groundless", and that the Assistant United States Attorneys (AUSAs) had acted in an unethical manner have also resulted in additional costs to IOS in terms of additional correspondence and the scheduling of meetings with the AUSAs to discuss IOS's compliance with the Cooperation Agreement in the criminal case. For the Court's information, with respect to IOS's charges of unethical conduct, IOS's counsel in the criminal case expressly had authorized the AUSAs to communicate directly with the company (and its designated monitor) on issues relating to the Cooperation Agreement. On August 19, 2008, after learning of the accusations of unethical conduct, the AUSAs e-mailed Mr. Reeder and asked for the basis for his statements so that they could respond or take remedial action. To date, they have received no response.

fraud allegations (IOS Br. at 6), IOS could hardly be any more embroiled in fraud allegations than it already is in the district court criminal and civil cases.

At the June 30, 2008 status conference, counsel for the Government did not know about the district court indictment involving $250 million of coupon fraud. IOS did. IOS also must have known on that day that it would soon be filing a motion to stay in Montana Food Distributors Assoc. v. International Outsourcing Services, LLC, et al., E. Dist. Wisc. No. 08-C-0457. IOS knew that the district court had already stayed Beiersdorf, et al. v. IOS, et al., E. Dist. Wisc. No. 07-C-0888, based upon a motion to stay filed by its former officers and employees, a stay to which IOS has not objected.

As of June 30, 2008, Government counsel was unaware of any of these facts and the case seemed to be a "garden variety contract dispute." IOS Br. at 6. IOS does not address any of these facts in its brief or explain why gaining knowledge of them would not reasonably cause the Government to change its position with respect to moving forward on an early dispositive motion; nor does it address why it is unreasonable for the Government to adopt IOS's position that the civil cases should be stayed pending the outcome of the criminal cases. Although IOS contends that this matter involves a dispute that is strictly contractual in nature, the Government has not accepted this assertion based upon the allegations of coupon fraud in the criminal and civil cases pending in the Eastern District of Wisconsin.

IOS also fails to address the point we made in our motion for reconsideration that a stay is appropriate at this time because the Court may never need to address the contract claims because of the collateral estoppel effect of a conviction in the criminal matter, or because of the Government's assertion of fraud counterclaims. Nor does IOS address the reasonableness of our

point that proceeding on the contract claims could prejudice the Government's ability to pursue fraud claims at a later date.

In its brief, IOS charges the Government "with injecting fraud into a garden variety contract dispute on the basis of ruminations. . . ." IOS Br. at 6. Given the various proceedings in the district court, this case is anything but "garden variety" at this point in time. The very pendency of these cases makes this matter unusual. From the perspective of the Government, there is no question that IOS involved AAFES in the criminal scheme. For example, IOS's attorneys have been informed by the Assistant United States Attorneys handling the criminal case that the Government has evidence, including IOS management reports and bank records, that IOS used the AAFES account to defraud manufacturers. What remains to be resolved through investigation is the extent to which IOS involved AAFES in its fraud scheme.

Finally, to the extent that IOS's arguments at pages 6-8 of its brief and, in particular, its statement at page 8 that "[h]aving initiated the statutory timetable for dispute resolution on February 1, 2007, the Government should not be permitted unlimited time in which to toy with what is and what is not before this Court for resolution" are intended to argue that the Government has not acted in a timely manner, IOS does not support this argument with any authority. As appropriate in a particular case, this Court has granted the Government leave to file an amended answer asserting fraud counterclaims as late as during trial on the merits. E.g., Daewoo Engineering and Const. Co., Ltd. v. United States, 73 Fed. Cl. 547, 581-82 (2006).

In addition, as IOS has pointed out in its brief, this contract involved millions of coupons worth millions of dollars. IOS Br. at 5. Even if the criminal case did not exist, it would be reasonable for the Government to conduct an audit to ensure that it was not charging too much or

too little to IOS. Given IOS's characterization of the dollar amount and coupon volume as being in the millions, it is reasonable for the Government to require time to conduct an audit.

III. IOS Provides No Basis For The Relief It Seeks

In its brief, IOS requests that, if the Court orders a stay, that the Court declare that IOS is not responsible for accrued interest, that the Court order the Government to timely complete its audit; that the Government be required to produce records to IOS; and that the Government be required to timely amend its pleadings. In support of these requests, IOS states that the "Court is inherently empowered to condition any relief it grants." IOS Br. at 7. Although IOS is the moving party with respect to these issues, it provides no authority for the requested relief, other than a reference to Rule 1 of the Rules of the Court of Federal Claims.[2] It provides no support for the argument that Rule 1 has been interpreted so broadly as to authorize the Court to award the relief it requests.

IOS's argument that the Court is inherently empowered to condition any relief it grants is not consistent with precedent. This Court does not possess equitable jurisdiction, other than in bid protest claims that arise pursuant to 28 U.S.C. § 1491(a)(3). Bernard v. United States, 59 Fed. Cl. 497 (2004). Nor does the Court have jurisdiction to issue declaratory judgments. United States v. King, 395 U.S. 1, 5 (1969). Accordingly, to the extent that IOS requests that the Court declare that the Government forfeit accrued interest, such relief would appear to be equitable or declaratory relief beyond this Court's jurisdiction.

---

[2] At page two of its brief, IOS invokes the "just, speedy, and inexpensive determination" language in RCFC 1. We note that Rule 1 of the Federal Rules of Civil Procedure contains the same language. In IOS's motion to stay in Montana Food, IOS addressed the argument that its motion would require those plaintiffs to wait until after the criminal case was resolved by arguing that "[t]hey will still get their day in court." A112.

To the extent that IOS requests that the Court impose scheduling obligations, such as limiting the stay to a time certain, the problem with this request is that the timing of the resolution of the criminal case depends in large part upon the defendants in that case and the district court. For the reasons stated in our motion for reconsideration, it would not be appropriate to lift the stay until those proceedings have been completed.

Finally, to the extent that IOS seeks discovery during the stay this would also be inconsistent with a stay and should not be granted based upon the reasons stated in our motion for reconsideration.

## CONCLUSION

For the foregoing reasons, the Government requests that the Court reconsider its order dated August 18, 2008, and stay this matter. In the alternative, the Government requests that the Court establish a reasonable schedule for discovery.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:

MAJOR DARA C. LEAVITT
Assistant General Counsel
- Commercial & Financial Law
HQ AAFES

s/ Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L St., N.W., 8th floor
Washington, D.C. 20530
Tel: (202) 353-1618
Fax: (202) 514-8624

September 12, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 12th day of September, 2008, a copy of the foregoing "Motion for Reconsideration" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Michael N. O'Connell