# In the United States Court of Federal Claims

No. 08-70 C

(E-Filed: October 29, 2008)

|  |  |  |
|---|---|---|
| HIGHQBPO, LLC, | ) | |
| | ) | |
| | ) | Motion for Reconsideration; |
| Plaintiff, | ) | RCFC 59(a); Motion to Stay |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

David T. Hickey, Washington, DC, for plaintiff.  Joe R. Reeder, Washington, DC, of counsel.

Michael N. O'Connell, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, Mark A. Melnick, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Major Dara C. Leavitt, Assistant General Counsel, Commercial & Financial Law, Army & Air Force Exchange Service Headquarters, of counsel.

OPINION

HEWITT, Judge

Before the court are Defendant's Motion For Reconsideration (defendant's Motion for Reconsideration or Def.'s Mot. for Recons.), Plaintiff's Response to the Government's Motion For Reconsideration and Request For Related Relief (plaintiff's Response or Pl.'s Resp.), and Defendant's Reply to Plaintiff's Response to Defendant's Motion For Reconsideration, and Request For Related Relief (defendant's Reply or Def.'s Reply).

Plaintiff, International Outsourcing Services, LLC (IOS),[1] had a contract with the Army & Air Force Exchange Service (AAFES) for "coupon redemption services." Complaint (Compl.) ¶ 2. The contract between IOS and AAFES (the IOS-AAFES contract) ended on July 1, 2004. Id. at ¶ 3. On October 20, 2004, "AAFES e-mailed IOS, claiming that IOS had improperly deducted some $213,000 from payments to AAFES." Id. at ¶ 11. IOS responded on November 5, 2004 "explaining that 'the short payments were the result of a denial of payment by the manufacturer, and not the result of any documented loss of coupons that would be covered under insurance.'" Id. at ¶ 12. On March 14, 2005, the Contracting Officer, Ms. Janie Walker, e-mailed IOS claiming "that IOS had improperly deducted $316,903.02 from payments to AAFES." Id. at ¶ 15. On February 22, 2006, the Contracting Officer wrote IOS a letter claiming "that IOS was liable for $913,768.39 in lost coupons." Id. at ¶ 20. IOS disputed this figure and asked for any supporting records in a letter dated March 22, 2006. Id. at ¶ 21. The Contracting Officer issued a final decision on February 1, 2007 "claiming that IOS breached the IOS-AAFES contract by losing coupons valued at $596,865.37." Id. at ¶ 22. In its Complaint, filed January 31, 2008, plaintiff "appeals the final decision of the AAFES Contracting Officer Ms. Janie Walker dated February 1, 2007." Id. at 1. Plaintiff requests that the claim by AAFES that IOS breached its contract be declared "null and void due to a complete lack of any credible substantiation." Id. at 6.

Defendant filed its answer on April 14, 2008, together with a counterclaim for damages suffered by AAFES as a result of plaintiff's actions. Plaintiff filed a reply to defendant's counterclaim on May 2, 2008. The parties filed a Joint Preliminary Status Report (JPSR) on June 20, 2008. After a telephonic status conference (TSC) with the parties on June 30, 2008, during which defendant undertook to file a dispositive motion, Transcript of June 30, 2008 TSC (June 30, 2008 Tr.) 9:23-25, the court issued a scheduling order setting forth a briefing schedule for defendant's expected dispositive motion, Order of June 30, 2008. The first date on the schedule was the filing date for defendant's disposive motion, August 22, 2008. Id. Defendant filed Defendant's Motion to Stay Pending the Resolution of Criminal Proceedings or, in the Alternative, to Cancel Summary Judgment Briefing Schedule (defendant's August 7, 2008 Motion or Def.'s Aug, 7, 2008 Mot.) on August 7, 2008. Defendant's August 7, 2008 Motion requested that the court stay proceedings "pending completion of a related criminal proceeding being conducted in the United States District Court for the Eastern District of Wisconsin." Def.'s Aug. 7, 2008 Mot. 1. After a TSC with the parties on August 18, 2008, the court denied defendant's August 7, 2008 Motion without prejudice and denied defendant's Motion to Cancel Summary Judgment Briefing Schedule. Order of Aug. 18,

---

[1] Plaintiff International Outsourcing Services, LLC (IOS) became HighQBPO LLC. See Order of Oct. 15, 2008. The court refers to plaintiff in this opinion as IOS.

2008. Defendant moves for reconsideration of the court's denial of defendant's August 7, 2008 Motion. Def.'s Mot. for Recons. 1. For the following reasons, defendant's Motion for Reconsideration is GRANTED.

I.      Standard of Review

Pursuant to Rule 59 of the Rules of the United States Court of Federal Claims (RCFC), "rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The court is afforded significant discretion in determining whether to grant reconsideration. Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990); Matthews v. United States (Matthews), 73 Fed. Cl. 524, 525 (2006). "The court must consider such motion with 'exceptional care.'" Henderson County Drainage Dist. No. 3 v. United States (Henderson County), 55 Fed. Cl. 334, 337 (2003) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999)). "A motion for reconsideration is not intended, however, to give an 'unhappy litigant an additional chance to sway' the court." Matthews, 73 Fed. Cl. at 525 (quoting Froudi v. United States, 22 Cl. Ct. 290, 300 (1991)). Accordingly, the movant "must do more than 'merely reassert[] arguments which were previously made and carefully considered by the court.'" Bannum, Inc. v. United States, 59 Fed. Cl. 241, 243 (2003) (quoting Henderson County, 55 Fed. Cl. at 337). "To prevail on a motion for reconsideration, the movant must point to a manifest error of law or mistake of fact." Pac. Gas & Elec. Co. v. United States, 58 Fed. Cl. 1, 2 (2003). "Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Matthews, 73 Fed. Cl. at 526 (citing Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004)). In this case, however, and unlike the usual circumstances surrounding a motion for reconsideration, the court denied defendant's August 7, 2008 Motion without prejudice, Order of Aug. 18, 2008, and the court views its decision on the Motion for Reconsideration before it to be within its reasonable discretion and subject to the directive that the RCFC "be construed and administered to secure the just, speedy, and inexpensive determination of every action," RCFC 1.

II.     Discussion

Defendant's Motion for Reconsideration now before the court provides the court with much more detail than that provided in defendant's August 7, 2008 Motion. Compare Def.'s Mot. for Recons. 1-3, 6-19 (providing four specific reasons that a stay is appropriate), with Def.'s Aug. 7, 2008 Mot. 5-7 (arguing briefly in three pages that a stay

is appropriate because of "a substantial overlap of witnesses and documentary evidence in the criminal and civil proceedings"). With full briefing on defendant's Motion for Reconsideration before the court, the court considers anew defendant's request to stay proceedings.

Defendant articulates four reasons for filing its Motion for Reconsideration: (1) its surprise over plaintiff's opposition to defendant's August 7, 2008 Motion considering agreements and arguments made by plaintiff in related proceedings in the United States District Court for the Eastern District of Wisconsin, Def.'s Mot. for Recons. 1-2; (2) the prejudicial nature of the August 18, 2008 TSC (related to defendant's surprise at plaintiff's opposition to its August 7, 2008 Motion), id. at 2-3; (3) the fact that defendant is "not in a position to file a dispositive motion requesting liability," id. at 3; and (4) because "it appears . . . that the Government's rights may not be vindicated by a contract claim alone," id.

Plaintiff argues that, because defendant "confidently represented to this Court that it could file a summary judgment motion" at the TSC on June 30, 2008, Pl.'s Resp. 1, and because "the Government continues to have no basis for assessing liability against IOS in what from the outset has been nothing but a contract dispute," id. at 2, a stay is not warranted. Defendant counters that "[a]t the June 30, 2008 status conference, counsel for the Government did not know about the district court indictment involving $250 million of coupon fraud[;] IOS did." Def.'s Reply 5.

> A. Whether Plaintiff's Opposition to Defendant's Motion to Stay is Inconsistent With Plaintiff's Positions in District Court

According to defendant:

> [T]he arguments . . . raised in support of [defendant's August 7, 2008 Motion,] includ[ing] the overlap of witnesses in this case and the criminal case, the likely difficulty the Government would face in gathering evidence from former owners, officers, employees, and contractors of [plaintiff] because they are under indictment in a district court, and the overlap of evidence in the two cases[,] . . . are fully consistent with those made by [plaintiff] and its former officers in at least two other civil cases.

Def.'s Mot. for Recons. 6. The court identifies the criminal case related to the IOS-AAFES contract as the IOS-AAFES criminal case. Defendant draws the court's attention to Montana Food Distribs. Assoc. v. Int'l Outsourcing Servs., LLC, et al. (Montana Food) and Beiersdorf, et al. v. IOS, et al. (Beiersdorf). Def.'s Mot. for Recons. 6-11.

4

Montana Food, No. 08-C-0457 (E.D. Wis.), involved a complaint alleging, as in the IOS-AAFES criminal case, "that [plaintiff] submitted coupons to manufacturers even though it had already charged back those coupons to innocent retailers, and that [plaintiff] had developed a computer program to shift charge[s] back[] to innocent retailers," Def.'s Mot. for Recons. 7 (citing Appendix to defendant's Motion for Reconsideration (Def.'s Mot. for Recons. App.) 39-74 (Montana Food Class Action Complaint ¶¶ 48, 70)). On July 30, 2008, IOS itself filed a motion to stay in Montana Food. Id. at 7; Def.'s Mot. for Recons. App. 101-14 (IOS Brief in Support of Motions to Stay Proceedings Pending Outcome of the Parallel Criminal Proceeding and to Enlarge Time to Answer or Otherwise Plead) (IOS Mot. to Stay, Montana Food). Defendant argues that plaintiff's reasons for filing its motion to stay in Montana Food are "exactly the same reasons that the Government argued in favor of the stay here." Def.'s Mot. for Recons. 7. Plaintiff's motion to stay in Montana Food stated:

> The allegations in the Montana Foods Complaint assert facts that significantly overlap with the pending criminal proceeding and relate to subject matter significantly intertwined with the criminal case. All of the pertinent witnesses from IOS with knowledge of the facts [upon which] these allegations are premised . . . , and who would have to testify as to these facts in order for IOS to appropriately answer and mount a defense, are currently indicted. These key witnesses will not be able to testify in this civil suit without waiving their constitutionally guaranteed Fifth Amendment privilege, subjecting them to the substantial risk that their testimony could be used to aid in the criminal prosecution against them. If they choose to exercise their Fifth Amendment rights, as they are likely to, then IOS will have not have an adequate opportunity to mount a meaningful defense. As a result, this matter should be stayed pending the outcome of the criminal action.

Def.'s Mot. for Recons. App. 102-03 (IOS Mot. to Stay, Montana Food 2-3). Defendant argues in its Motion for Reconsideration that, as in Montana Food, "the facts and witnesses in this case and the criminal case overlap" and that "it is likely that evidence cannot be obtained from the 'key' witnesses at IOS because they 'will not be able to testify in this civil suit' without waiving their rights pursuant to the Fifth Amendment, just as IOS argued in the district court." Def.'s Mot. for Recons. 8. Defendant asserts that it "is concerned about its own ability to gather evidence through discovery and the effect that witnesses asserting a Fifth Amendment privilege would have upon the Government's ability to gather evidence." Id. at 9.

In plaintiff's motion to stay in <u>Montana Food</u>, plaintiff argued, "Additionally, courts have held that where only individuals are indicted, but a corporation will be unable to mount a defense in a related civil case because the key witnesses will invoke the Fifth Amendment, the better course is to grant a stay." Def.'s Mot. for Recons. App. 105 (IOS Mot. to Stay, <u>Montana Food</u> 5). At the TSC on August, 18, 2008, however, plaintiff argued against a stay because "there is no pending criminal action against IOS." Transcript of Aug. 18, 2008 TSC (Aug. 18, 2008 Tr.) 4:11-12. Defendant takes issue with plaintiff's argument in light of the argument made by plaintiff in <u>Montana Food</u>. Def.'s Mot. for Recons. 9.[2]

<u>Beiersdorf</u>, No. 07-C-0888 (E.D. Wis.), involved a complaint alleging that "IOS and its former owners, officers, and employees had 'engaged in an enterprise whereby they conspired to defraud – and did defraud – consumer product manufacturers of hundreds of millions of dollars,'" Def.'s Mot. for Recons. 10 (quoting Def.'s Mot. for Recons. App. 115-49 (<u>Beiersdorf</u> Second Amended Complaint ¶ 1)). IOS officers Steven Furr, Bruce Furr, Lance Furr, and William Babler were defendants in <u>Beiersdorf</u>. Def.'s Mot. for Recons. App. 122-23 (<u>Beiersdorf</u> Second Amended Complaint ¶¶ 27-30). They filed a motion to stay proceedings on December 13, 2007. Def.'s Mot. for Recons. App. 150-56 (Defendants Steven A. Furr, Bruce A. Furr, Lance A. Furr and William L. Babler's Memorandum in Support of Their Motion for Stay of Proceedings Pending Resolution of Parallel Criminal Proceeding (Mot. to Stay, <u>Beiersdorf</u>). Defendant asserts that the motion to stay in <u>Beiersdorf</u> "emphasized the similarity of the criminal case and the <u>Beiersdorf</u> matter, as well as [the defendants'] need to protect their rights against self-incrimination under the Fifth Amendment." Def.'s Mot. for Recons. 11. On February 8, 2008, the defendants and plaintiffs in <u>Beiersdorf</u> stipulated to a stay. Def.'s Mot. for Recons. App. 157-64 (Stipulation Concerning Stay With Respect to Individual Defendants, <u>Beiersdorf</u>). On April 30, 2008, the United States District Court for the Eastern District of Wisconsin issued a Decision and Order stating that "[p]ursuant to paragraph 12 of the parties' 'Stipulation Concerning Stay with Respect to Individual Defendants,' the Court presumes that the parties will now move for a stay with regard to this entire case, pending the resolution of the ongoing criminal matter." Def.'s Mot. for Recons. App. 165-83 (Decision and Order of Apr. 30, 2008, <u>Beiersdorf</u> 19 (internal citations omitted)).

Defendant argues that plaintiff should be judicially estopped from objecting to the stay here because it involves taking a position that is inconsistent with the position it took

---

[2]The United States District Court for the Eastern District of Wisconsin has not yet ruled on IOS's Motion to Stay in <u>Montana Food Distribs. Assoc. v. Int'l Outsourcing Servs., LLC, et al.</u> (<u>Montana Food</u>), No. 08-C-0457 (E.D. Wis.).

in Montana Foods and Beirsdorf. Def.'s Mot. for Recons. 11-12. The doctrine of judicial estoppel posits that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." Davis v. Wakelee, 156 U.S. 680, 689 (1895). "The decision whether to invoke judicial estoppel lies within the court's discretion . . . ." Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir. 1996). "Judicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants." Id. Although there is no precise formula regarding when the doctrine of judicial estoppel should be applied, certain factors inform the court's decision:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled". . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (citations omitted) ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint."); Cuyahoga Metro. Hous. Auth. v. United States, 65 Fed. Cl. 534, 554 (2005) (discussing the same factors as New Hampshire v. Maine). According to defendant, the conditions in favor of judicial estoppel have been met:

> IOS's opposition to a stay here is manifestly different from the position it and its former officers/employees have taken in the district court. These different positions could create the perception that either the district court or this Court has been misled by their conflicting arguments concerning the overlap of facts and witnesses in this case and the criminal case, the impact on a civil case of witnesses taking the Fifth Amendment, and the fact that IOS is currently not a defendant in the criminal case. Finally, IOS would derive an unfair advantage if it is not estopped because . . . the Government cannot proceed in this case in a manner that would jeopardize its position in the criminal case, nor can it risk limiting its liability to assert civil fraud claims against IOS.

Def.'s Mot. for Recons. 12.

As defendant notes, plaintiff's Response "does [not] address why it is unreasonable for the Government to adopt IOS's position that the civil cases should be stayed pending the outcome of the criminal cases." Def.'s Reply 5.  The court finds that plaintiff's opposition to defendant's Motion to Stay is "clearly inconsistent," New Hampshire v. Maine, 532 U.S. at 750, with its position in Montana Food and Beiersdorf. In Beiersdorf, plaintiff succeeded in obtaining a stay, Def.'s Mot. for Recons. App. 165-83 (Decision and Order of Apr. 30, 2008, Beiersdorf 19), while in Montana Food, the court has not yet decided IOS's Motion to Stay, see supra note 2.  The court finds that "judicial acceptance of [plaintiff's prior] inconsistent position in [this] proceeding would create 'the perception that either the [Eastern District of Wisconsin] or the [United States Court of Federal Claims] was misled." New Hampshire v. Maine, 532 U.S. at 750.  The court also finds that plaintiff could "derive an unfair advantage or impose an unfair detriment on" defendant if plaintiff is not estopped.  See id. at 751.

      B.      Whether Defendant Will Be Prejudiced if the Case is Not Stayed

Second, defendant argues that the government will be prejudiced if this matter is not stayed.  Def.'s Mot. for Recons. 12-14.  Defendant argues that a denial of a stay "could cause hardship to the Government because of the greater scope of discovery allowed in a civil case." Id. at 13 (arguing that "a stay would prevent the use of civil discovery rules for criminal discovery purposes or to obstruct the prosecution").  Further, defendant argues that "a stay may obtain the economies resulting from the doctrine of collateral estoppel" because "if it were to establish in the criminal case that IOS fraudulently charged back any coupons to AAFES, the Government would be entitled to the dismissal of IOS's complaint without the Court ever considering IOS's contract claim." Id.  Defendant also alleges that by opposing defendant's August 7, 2008 Motion and defendant's Motion for Reconsideration, plaintiff is "attempt[ing] to obtain a ruling in this Court based upon an incomplete record that can be used to the advantage of IOS in the event of future civil fraud proceedings (by claiming res judicata)." Id. at 14. Defendant asserts that "[a] ruling by the Court upon such an incomplete record could also improperly benefit IOS's officers/employees in the district court criminal proceeding. Id. Finally, defendant points out that a stay would not result in any prejudice to plaintiff because "IOS stands to receive no damages even if it wins this case because it is the Government that is seeking payment in this action, not IOS." Id.  Plaintiff does not address the issue of prejudice in its Response.  See Pl.'s Resp. passim.  The court agrees with defendant that defendant might be prejudiced if the case is not stayed, in particular, because of the differing (and broader) scope of discovery in a civil proceeding as compared to a criminal proceeding.

8

      C.      Whether Defendant is in a Position to File a Dispositive Motion on Liability

Defendant argues that "the Government is simply not in the position to file a dispositive motion requesting liability." Def.'s Mot. for Recons. 3. At the TSC held on August 18, 2008 the court addressed defendant's August 7, 2008 Motion. Aug. 18, 2008 Tr. passim. The court reasoned that because the dispute focuses for the most part on contractual issues, defendant could proceed with a motion for summary judgment. Id. at 6:21-25, 23:5-10. According to defendant, however, "based upon the revelations of the criminal case and our audit to date, the Government currently is examining this matter as a potential fraud case." Def.'s Mot. for Recons. 14. Defendant argues that if they "seek and receive authority to file a motion to assert fraud counterclaims, the Court may never reach the contractual issues." Id. Furthermore, defendant asserts that "the Government cannot at this time represent to the Court pursuant to Rule 11 that there are sufficient uncontroverted facts for the Court to enter summary judgment in favor of the Government upon liability." Id. at 14-15. Defendant argues that whether IOS had a right to charge back AAFES depends on facts and circumstances that are the subject of an ongoing audit, id. at 15-18, and that "[u]ntil these facts can be developed through the audit and discovery, [defendant] will not be in a position to file a motion for summary judgment, id. at 18. The court agrees.

In its Response, plaintiff states that "[i]f the Government is not able to articulate a basis for summary judgment, it obviously cannot be made to do so." Pl.'s Resp. 2. Plaintiff also argues that "instead of wasting nearly two months of time, the Government owed a duty to the Court to candidly convey this in advance, before the actual date a required court-scheduled pleading is due, and rather than filing over 250 pages of argument and records having no place in this action." Id. at 2-3. Plaintiff appears to base its argument on the disparity in resources between defendant and plaintiff:

> The Department of Justice holds significant resources at its disposal. Those resources have already been deployed against IOS in the very preliminary stages of this litigation. IOS, on the other hand, cannot absorb significant legal costs simply to reach a stage where the Government is willing to stand responsibly behind the substance of the Contracting Officer's Final Decision in the amount of $596.865.37. This action was filed because IOS disagreed with AAFES' Final Decision and had to file this defensive suit to avoid a default judgment under the Contract Disputes Act statutory filing deadlines. Now, the Government seeks to embroil this simple contract case with unexplored allegations of fraud against AAFES in the hope that its current ruminations might uncover a single coupon upon which it can justify making a new fraud allegation.

9

Id. at 6.  Defendant argues that "[d]istrict court resolution of issues would save both parties costs, and might even facilitate settlement."  Def.'s Reply 4.  According to defendant, "if IOS is truly concerned about its legal costs, it should support a stay in this matter, just as it has requested in the district court."  Id. (footnote omitted).  In response to plaintiff's allegation that the Government is attempting to "embroil" IOS in fraud allegations, Pl.'s Resp. 6, defendant points out that "IOS could hardly be any more embroiled in fraud allegations than it already is in the district court criminal and civil cases," Def.'s Reply 5.

Plaintiff argues that "[t]he Government should be constrained, as any other litigant, to what it responsibly can plead.  Nothing in the Government's answer to the IOS complaint, or in its counterclaim, or, for that matter, the Contracting Officer's final decision of February 1, 2007 makes any mention of fraud."  Pl.'s Resp. 6.  Defendant argues that there is no requirement that the contracting officer's final decision have mentioned fraud.  Def.'s Reply 3.  Defendant responds, correctly, that "[t]he Government's right to assert fraud counterclaims in this Court is not dependent upon any discussion of fraud in the contracting officer's final decision.  Def.'s Reply 3 (citing Martin J. Simko Constr., Inc. v. United States (Martin J. Simko), 852 F.2d 540 (Fed. Cir. 1988)).  Martin J. Simko involved the question of "whether the Contract Disputes Act of 1978 [(CDA)] requires that the government's CDA and False Claims Act fraud counterclaims, or a Special Plea in Fraud (however raised), first must be the subject of a contracting officer's (CO) decision before the Claims Court's jurisdiction is properly invoked."  Martin J. Simko, 852 F.2d at 542.  The Federal Circuit held that it did not.  Id. at 542-45.  Defendant further argues that "[a]s of June 30, 2008, Government counsel was unaware of any of these facts and the case seemed to be a 'garden variety contract dispute.'"  Def.'s Reply 5 (quoting Pl.'s Resp. 6).

As defendant notes, "IOS does not address any of these facts in its brief or explain why gaining knowledge of them would not reasonably cause the Government to change its position with respect to moving forward on an early dispositive motion."  Id.  The court agrees with defendant that defendant is not in a position to file a dispositive motion on liability at this time.

    D.    Whether the Government's Rights Will Be Vindicated By the Contract Claim

Defendant argues that "the Government cannot proceed with a summary judgment motion because, if the Government were later to proceed with civil fraud claims in the district court, [plaintiff] likely would argue that such claims are barred because they were mandatory counterclaims in this Court."  Def.'s Mot. for Recons. 3.  Furthermore, "the

10

Government cannot proceed with a summary judgment proceeding here and ask the Court to enter judgment on an incomplete record because any rulings on such an incomplete record potentially could prejudice the Government in the criminal case." Id. at 3. Plaintiff's Response contains no reply to this argument. See Pl.'s Resp. passim.

      E.      Whether Any Conditions Should Apply to Any Stay

In its Response, plaintiff requests that any stay be conditioned on the following:

> (1) IOS be relieved of all claims of accrued interest stemming from delay in resolving this dispute . . . ;
> (2) the Government be required to pay all needless costs that have been incurred in reliance upon the accuracy of the Contracting Officer's Final Decision of February 1, 2007 demanding $596,865.37;
> (3) if and to the extent it allegedly pertains to contract interpretation or performance at issue in this litigation, the Government be required to timely complete what it characterized to this Court on August 7[, 2008] as a new audit;
> (4) consistent with RCFC 1, the Government be required to promptly provide copies to IOS of all records that could support any new or different claims against IOS, in whatever format such records are arranged by the Government in support of any new or altered allegations or claims. This fourth condition, at a minimum, should include all of what the Government reports to this Court to be 90 boxes of related files. (Def.'s [Aug. 7, 2008 Mot.] 2 . . . )[; and]
> (5) Further, consistent with RCFC 1, the Court should limit any stay of relief to a specific time certain, during which the Government is required, should it seek to inject criminality or fraud into this contract dispute, to timely amend its pleadings. Having initiated the statutory timetable for dispute resolution on February 1, 1007, the Government should not be permitted unlimited time in which to toy with what is and what is not before this Court for resolution.

Pl.'s Resp. 7-8.

Defendant argues that "[a]lthough IOS is the moving party with respect to these issues, it provides no authority for the requested relief, other than a reference to Rule 1 of the [RCFC]." Def.'s Reply 7. Furthermore, defendant points out that plaintiff "provides no support for the argument that Rule 1 has been interpreted so broadly as to authorize the Court to award the relief it requests." Id. Defendant argues that "to the extent that IOS

11

requests that the Court declare that the Government forfeit accrued interest, such relief would appear to be equitable or declaratory relief beyond this Court's jurisdiction." Id. In relation to its second proposed condition, plaintiff questions "how the Contracting Officer could have had any responsible basis for demanding . . . $596,865.37, without first having begun to examine the facts." Pl.'s Resp. 5. Defendant argues:

> [T]o the extent that IOS requests, without any citation to authority, that the Government be required to pay 'costs that have been incurred in reliance upon the accuracy of the Contracting Officer's Final Decision' such a request is not only premature because the Government has not changed the amount sought, but is also inconsistent with th[e] precedent that expressly allows the Government to depart from the decision without penalty.

Def.'s Reply 2-3. Defendant cites to Wilner v. United States (Wilner), 24 F.3d 1397 (Fed. Cir. 1994) (en banc), to support its argument. In Wilner, the United States Court of Appeals for the Federal Circuit stated:

> The plain language of the CDA and our decision in Assurance [Co. v. United States, 813 F.2d 1202 (Fed. Cir. 1987)] make it clear that when suit is brought following a contracting officer's decision, the findings of fact in that decision are not binding upon the parties and are not entitled to any deference.

Wilner, 24 F.3d at 1401. Finally, defendant argues that requiring discovery during the stay would be inconsistent with the reasons for the stay and that limiting the stay to a time certain would be inappropriate. Def.'s Reply 8.

The court does not find any of plaintiff's proposed conditions either legally justified, or, given the pendency of the criminal proceeding, appropriate.

III.    Conclusion

Because defendant's Motion for Reconsideration demonstrates that a stay in this proceeding is appropriate, defendant's Motion for Reconsideration is GRANTED. The court declines to impose any of the conditions on the stay requested by plaintiff in plaintiff's Response. The matter is hereby STAYED pending the outcome of criminal proceedings in the district court. The parties shall, within 10 days of the termination of the criminal proceeding, file a joint status report or, if the parties cannot agree, separate status reports, suggesting a schedule for further proceedings in this matter.

IT IS SO ORDERED.

                                                          s/ Emily C. Hewitt
                                                          EMILY C. HEWITT
                                                          Judge